AARON D. FORD
  Attorney General
BROOKE D. GEORGUSON (Bar No. 16406)
  Deputy Attorney General
State of Nevada
Office of the Attorney General
100 N. Carson St.
Carson City, NV 89701
(775) 684-1257 (phone)
(775) 684-1108 (fax)
bgeorguson@ag.nv.gov
*Attorneys for Respondent*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

ARNOLD ANDERSON,

      Petitioner,

vs.

WILLIAM GITTERE, *et al.,*

      Respondents.

Case No.: 3:22-cv-00070-ART-CSD

**ANSWER TO REMAINING CLAIMS IN PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 8)**

Respondents, through legal counsel, Aaron D. Ford, Attorney General of the State of Nevada, and Brooke D. Georguson, Deputy Attorney General, hereby submit their answer to the remaining claims in petitioner Arnold Anderson's (Anderson) petition for writ of habeas corpus. ECF No. 8. Respondents base this answer upon the following points and authorities, together with all other pleadings, documents, and exhibits on file herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## BACKGROUND FACTS AND PROCEDURE

### I.    FACTUAL HISTORY

On August 23, 2016, Anderson arrived in his black Camaro at Terry Bolden's (Bolden) residence. ECF No. 64-3 (Ex. 108) at 145. Anderson asked Bolden for money Bolden owed him. *Id*. at 146. Bolden attempted to give Anderson some of the money he had; however, Anderson tried to take all the money Bolden had on him. *Id*. As Bolden was scuffling with Anderson to prevent Anderson from taking his money, a woman exited the Camaro. *Id*. Anderson told the woman to give him the gun.

*Id*. Anderson proceeded to shoot Bolden three times. *Id*. Anderson shot Bolden in the head, the stomach, and then the leg. *Id*. at 147. Bolden fell down after he was shot in the leg. *Id*. While he was on the ground, Anderson attempted to run over him, then fled the scene. *Id*.

Rhonda Robinson (Robinson) who witnessed the incident told the 911 operator that a man she knows as AJ, who she later confirmed was Anderson, shot her boyfriend. ECF No. 64-3 (Ex. 108) at 86. Both Bolden and Robinson identified Anderson as the shooter in a photo array. *Id*. at 124, 161. Bolden, Robinson, and another eyewitness testified that a black, older Camaro drove away from the scene of the incident. *Id*. 65, 108, 182. After receiving a name and description of Anderson and his vehicle, officers located Anderson and his Camaro and eventually arrested him. ECF No. 66-1 (Ex. 111) at 72, 78.

During the preliminary hearing, Bolden saw the female who handed Anderson the gun in the courthouse. ECF No. 64-3 (Ex. 108) at 163. That female was later identified as Anderson's daughter, Arndaejae Anderson (Arndaejae).

After a thorough *Faretta* canvass, Anderson represented himself at trial with the assistance of standby counsel, Kenneth Frizzell (Frizzell). ECF No. 60-7 (Ex. 54).

On the morning of the second day of trial, prosecutors became aware of a jail call Anderson made to a female. ECF No. 64-3 (Ex. 108) at 4. Anderson told the female to disappear for a week and leave her phone so she could not be tracked. *Id*. The phone number Anderson called was the same phone number he called to wish a female happy birthday. *Id*. The date he wished the female happy birthday was his daughter's birthday. *Id*.

The prosecutor's investigator, Marco Rafalovich (Rafalovich), testified to Arndaejae's statements at the juvenile facility. ECF No. 66-1 (Ex. 111) at 102. According to Rafalovich, Arndaejae witnessed the shooting, identified her father as the shoor, and indicated her father told her to lie about his whereabouts by saying that he was in California during the shooting. *Id*. at 102-03.

## II.    TRIAL AND APPELLATE COURT PROCEEDINGS

### A.    A Jury Found Anderson Guilty of Attempted Murder and Battery.

After a five-day trial, a jury found Anderson guilty of one count of Attempt Murder with Use of a Deadly Weapon; and one count of Battery with Use of a Deadly Weapon Resulting in Substantial

Bodily Harm. ECF No. 67-21 (Ex. 134). The trial court sentenced Anderson to an aggregate sentence of 20 to 50 years. *Id.*

Anderson filed a notice of appeal. ECF No. 67-24 (Ex. 137).

**B.    The Nevada Supreme Court Affirmed Anderson's Convictions.**

The Nevada Supreme Court affirmed Anderson's convictions, rejecting his claim that his right to confront witnesses and his right to counsel were violated. ECF No. 68-32 (Ex. 179).

## III.    STATE HABEAS PROCEEDINGS

In his state habeas petition, Anderson raised five claims of ineffective assistance of appellate counsel and multiple claims of trial court error. ECF No. 69-6 (Ex. 187).

The Nevada Court of Appeals affirmed the trial court's denial of the petition. ECF No. 72-12 (Ex. 248).

## IV.    FEDERAL HABEAS CORPUS PROCEEDINGS

Anderson initiated his federal habeas proceedings in February of 2022. ECF No. 8, 8-1. He now alleges:

1.    Anderson's Confrontation Clause rights were violated regarding witness Marco Rafalovich.

2.    Anderson's Sixth Amendment right to counsel was violated.

    A.    Trial counsel acted ineffectively by failing to give Anderson the recorded statement of Arndaejae before the forfeiture hearing.

    B.    Trial counsel acted ineffectively by failing to visit Anderson in jail, which led to a hostile relationship and a conflict of interest.

    C.    Trial counsel acted ineffectively by failing to turn over discovery.

    D.    Trial counsel acted ineffectively by failing to timely file his pretrial writ.

3.    Anderson's convictions for attempted murder and battery are redundant.

4.    Arndaejae was charged with the attempted murder and battery of Bolden, and although she pleaded guilty to a lesser included offense, Anderson cannot also be charged and convicted with regard to the same crimes against Bolden.

5.    The prosecution solicited false testimony from crime scene analyst Caitlyn King.

3

6.    Juror number 6 should have been removed for cause during voir dire and then removed from the jury after she arrived late one day for trial, which resulted in a *Batson* violation because the alternates, who should have been substituted for juror number 6, were black.

7.    The justice court should have dismissed Anderson's case for a lack of evidence at the preliminary hearing.

8.    Anderson's three-hour detention following his traffic stop amounted to an unlawful seizure.

9.    Officer Jacob Werner presented false testimony.

10.    There was no arrest warrant issued or existence of probable cause for his arrest.

11.    Anderson's counsel was ineffective by failing to timely file his pretrial writ.

12.    The court clerk said that Anderson was guilty at the beginning of trial.

13.    The prosecutor failed to properly authenticate the jail phone call, which resulted in the presentation of false evidence and the jury knowing he was in jail.

14.    Anderson was denied a fair trial because the State was represented by two prosecutors at the trial.

15.    The trial court erred in ignoring jurors' questions.

16.    The trial court erred in not inquiring why the jury foreman wrote "dick" in his notes because this showed that the jury foreman was biased.

17.    Anderson failed to receive his discovery from the State.

18.    The photographic lineup was prejudicial.

19.    Bolden presented differing stories of the crime, so the prosecutor's presentation of Bolden as a witness amounted to the knowing presentation of false testimony.

20.    Robinson testified inconsistently.

21.    The trial court failed to inquire about Anderson's mental health before allowing him to represent himself at trial.

22.    The jury instructions were misleading.

23.    The prosecution failed to subpoena Arndaejae.

24. Anderson's right to a speedy trial was violated.

25. The prosecution failed in correct the false testimony of crime scene analyst Brooke Cornell.

26. The jury was biased.

27. The search warrant for Anderson's car was erroneous.

28. The trial court erred in overruling Anderson's objections during trial.

29. The prosecution lied to the jury.

30. The prosecution changed its theory of the case.

31. The trial court erred by not declaring a mistrial.

32. The trial court violated various judicial codes of conduct.

33. Appellate counsel was ineffective.

    A. Appellate counsel was ineffective by failing to raise various issues in Anderson's appeal.

    B. Appellate counsel was ineffective by lying during Anderson's appeal.

    C. Appellate counsel was ineffective by failing to communicate with Anderson about his appeal.

34. Officer Gilberto Valenzuela lied in his police report and provided false testimony at trial.

35. There was insufficient evidence to support Anderson's convictions.

36. The trial court allowed Rafalovich's inadmissible statement.

*Id.*

Respondents moved to dismiss the petition for containing claims that were untimely, unexhausted, procedurally defaulted, and/or conclusory. ECF No. 81. On November 21, 2023, this Court granted the motion in part and denied it in part. ECF No. 90 at 1. The Court dismissed Grounds 2(a), 2(c), 2(d), 4, 5, 6, 7, 9, 11, 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 28, 29, 30, 31, 32, a portion of 33(a), 34, 35, and 36 as procedurally defaulted. *Id.* at 12-14. The Court also dismissed Grounds 4, 8, 10, and 27 as noncognizable. *Id.* at 14.

Respondents now answer the remaining claims in Anderson's federal petition.

**ARGUMENT**

I.     **APPLICABLE LAW**

A.     **AEDPA Governs this Court's Review of Anderson's Petition.**

The Anti-terrorism and Effective Death Penalty Act of 1996 (AEDPA) governs these proceedings. 28 U.S.C. § 2254. Claims adjudicated on the merits in state court are entitled to deference in a federal habeas action. *Id*. Applying AEDPA deference, federal courts cannot grant relief unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 583 U.S. 63, 70-73 (2003).

The clearly established Supreme Court precedent must offer a holding, not merely dictum, that "squarely addresses" the issue raised by the petitioner in his federal habeas action and provides a "clear answer to the question presented." *Wright v. Van Patten*, 552 U.S. 120, 126 (2008) (*per curiam*). If no Supreme Court case squarely addressed, and provided a clear answer to, the petitioner's claim when the state court adjudicated the claim, then the state court's decision cannot contradict or unreasonably apply "clearly established federal law." *Id*. at 126.; *see also Green v. Fisher*, 565 U.S. 34, 38 (2011). In such cases, § 2254(d)(1) bars habeas corpus relief on the petitioner's claim.

Under the "reasonable application" clause, a federal court may grant a writ "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). The state court's "unreasonable application" of Supreme Court precedent must be more than merely incorrect or erroneous. *Id*. at 410. Rather, it must be so unreasonable no fair-minded jurist would agree with it. *Harrington v. Richter*, 562 U.S. 86 at 101-102 (2011). "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

The "highly deferential standard for evaluating state-court rulings" adopted by § 2254(d) demands state court decisions "be given the benefit of the doubt." *Id*. A state court need not cite to Supreme

Court cases nor even be aware of Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8 (2003). Accordingly, a state court's decision will stand "so long as neither the reasoning nor the result of the state-court decision contradicts" clearly established Supreme Court precedent. *Id*.

### B. Review of Claims of Ineffective Assistance of Counsel.

To prevail on an ineffective assistance of counsel claim, a petitioner must establish both that counsel's performance was deficient and that he was prejudiced by the deficiency. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). The test for deficiency is "whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. at 689 (internal quotation marks and citation omitted).

Review of an attorney's performance must adopt counsel's perspective at the time of the challenged conduct to avoid the "distorting effects of hindsight." *Strickland*, 466 U.S. at 689. The Court is required to "reconstruct the circumstances of counsel's challenged conduct" and to "evaluate the conduct from counsel's perspective at the time." *Id*. Surmounting *Strickland*'s high bar is never an easy task. *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

The petitioner bears the burden to show there is no reasonable argument he received effective assistance of counsel under *Strickland*'s deferential standard. *Richter*, U.S. at 105. There are countless ways to provide effective assistance in any given case. "Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland*, 466 U.S. at 689. As a result, "[t]he question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Richter*, 562 U.S. at 105 (internal quotations and citation omitted). The petitioner must demonstrate that the Nevada appellate court's ruling on the claim was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103.

When addressing prejudice or reviewing application of the prejudice prong in the context of AEDPA, the question is not whether the Court believes the petitioner suffered prejudice and the

Nevada appellate court was incorrect in finding none; rather, the Court must ask whether the Nevada appellate court's determination of no prejudice was unreasonable, which is a substantially higher threshold. *Avena v. Chappell*, 932 F.3d 1237, 1250-51 (9th Cir. 2019) (citation and internal quotation marks omitted).

The existence of "overwhelming" evidence is an appropriate basis to conclude no prejudice exists under *Strickland* because it supports the conclusion that there would be no "reasonable probability" of a different result absent counsel's error. *See Strickland*, 466 U.S. at 700 ("Given the overwhelming aggravating factors, there is no reasonable probability that the omitted evidence would have changed the conclusion. . ."); *see also id.* at 696. ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support").

Under AEDPA, the petitioner must show that the state court "applied *Strickland* to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 698-99. The standards for *Strickland* and 28 U.S.C. § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. *Strickland*, 466 U.S. at 689; *Pinholster*, 563 U.S. at 190 (citation omitted). Federal habeas review of an ineffective assistance of counsel claim is limited to the record before the state court that adjudicated the claim on the merits. *Pinholster*, 563 U.S. at 182-85.

For the reasons presented below, Anderson's remaining claims are without merit.

**II.    GROUND 1: THE NEVADA SUPREME COURT CORRECTLY DECIDED THAT THE ADMISSION OF MARCO RAFALOVICH'S TESTIMONY DID NOT VIOLATE ANDERSON'S RIGHT TO CONFRONTATION.**

In Ground 1, Anderson alleges the Confrontation Clause was violated when investigator Rafalovich testified. ECF No. 8 at 3. Specifically, he alleges Rafalovich's testimony concerning Arndaejae's statements was hearsay. *Id*. The Nevada Supreme Court denied this claim, and this Court should likewise deny this claim because Anderson fails to establish any constitutional violation.

Anderson complains that Rafalovich testified to a statement made by an unavailable witness, Arndaejae, and the statement could not be verified by prior testimony. ECF No. 8 at 4. Further, he argues he was not able to confront the witness because Arndaejae was never subpoenaed. *Id*. Finally, he

/ / /

alleges the prosecutor knew the statement Rafalovich testified to was false. *Id.* at 5. Anderson's arguments do not have merit.

### A.   The Nevada Supreme Court Denied this Claim.

The Nevada Supreme Court denied this claim on direct appeal:

> Anderson argues that the introduction of Arndaejae's out-of-court statements violated his rights under the Sixth Amendment's Confrontation Clause. *See* U.S. Const. amend. VI. The State does not dispute, and we accept without deciding, that Arndaejae's out-of-court statements were testimonial. Rather, the State asserts that Anderson forfeited his right to confront Arndaejae by procuring her absence. Anderson in turn asserts that the State failed to prove by a preponderance of the evidence that Arndaejae was absent because of his actions so as to trigger the forfeiture-by-wrongdoing exception to the Confrontation Clause.[1] Whether a defendant's Confrontation Clause rights were violated is a question of law subject to de novo review. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009).

> The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right… to be confronted with the witnesses against him." U.S. Const. amend. VI. It bars admission of "testimonial evidence" unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The United States Supreme Court, however, has recognized that a defendant may forfeit the right to confrontation. In particular, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833 (2006). To demonstrate such a forfeiture, the State must "show[] that the defendant intended to prevent a witness from testifying." *Giles v. California*, 554 U.S. 355, 361 (2008). Although the Supreme Court has acknowledged forfeiture by wrongdoing as an exception to the Sixth Amendment's confrontation guarantee and addressed the scope of that exception, it has not taken a position on the evidentiary standard that the State must meet to show forfeiture by wrongdoing. *See Davis*, 547 U.S. at 833 (taking "no position on the standards necessary to demonstrate such forfeiture"). This court also has not taken a position on that issue. We take this opportunity to do so.

> *Preponderance of the evidence is the appropriate standard of proof*

> Among the federal circuit and state courts that have grappled with the burden-of-proof issue, the focus has been on whether the appropriate burden is clear and convincing evidence or a more forgiving preponderance of the evidence. *See United States v. Johnson*, 757 F.3d 815, 820-23 (9th Cir. 2014) (discussing the issue and cases addressing it).

---

[1] There are two independent hurdles to admitting out-of-court statements: the Sixth Amendment's Confrontation Clause and Nevada's evidentiary statutes. Anderson does not challenge the admissibility of Arndaejae's statements pursuant to the evidentiary statutes, so we do not address them.

The overwhelming majority of those courts have held that the preponderance-of-the-evidence standard applies to the forfeiture exception to the Confrontation Clause. *Id*. at 821-23; *see State v. Thompson*, 45 A.3d 605, 615-16 (Conn. 2012) (compiling a list of all states applying the preponderance standard as of 2012).

On one end of the spectrum, the United States Court of Appeals for the Fifth Circuit held in *United States v. Thevis* that the prosecution must prove that a defendant procured the absence of a witness by clear and convincing evidence for the forfeiture exception to apply. 655 F.2d 616, 631 (5th Cir. 1982), *superseded by rule on other grounds as stated in United States v. Nelson*, 242 Fed. App'x 164 (5th Cir. 2007). In doing so, the court reasoned that confrontation rights are important "in testing the reliability of evidence" and the clear-and-convincing-evidence standard typically applies to evidentiary decisions "[w]here reliability of evidence is a primary concern." *Id*. (citing *United States v. Wade*, 388 U.S. 218, 240 (1967) (holding that where defense counsel was not present at a lineup identification, the prosecution must be given an opportunity to prove by clear and convincing evidence that the witness's in-court identification of the defendant was based on observations of the defendant other than the lineup identification)). On the other end of the spectrum, a number of federal circuits apply a preponderance-of-the-evidence standard. In *United States v. Mastrangelo*, for example, the United States Court of Appeals for the Second Circuit opined that the preponderance standard is more suitable because "waiver by misconduct is an issue distinct from the underlying right of confrontation" and a higher standard "might encourage behavior which strikes at the heart of the system of justice itself." 693 F.2d 269, 273 (2d Cir. 1982); *see also United States v. White*, 116 F.3d 903, 912 (D.C. Cir. 1997); *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996); *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982) ("A standard that requires the proponent to show that it is more probable than not that the defendant procured the unavailability of the witness is constitutionally sufficient under the due process and confrontation clauses."); *United States v. Balano*, 618 F.2d 624, 629 (10th Cir. 1979), *overruled on other grounds by Richardson v. United States*, 468 U.S. 317, 325-26 (1984).

We agree with the majority of courts that have considered the issue – the preponderance standard provides the appropriate burden of proof for purposes of the forfeiture-by-wrongdoing exception to the Confrontation Clause. As the United States Supreme Court has observed, the forfeiture-by-wrongdoing exception is not about the reliability of the evidence at issue. *Crawford*, 541 U.S. at 62 (stating that the exception make[s] no claim to be a surrogate means of assessing reliability"). The exception instead grows out of equitable concerns with allowing a defendant to benefit from his or her own wrongdoing. *Reynolds v. United States*, 98 U.S. 145, 155-59 (1879) (stating that "[t]he Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts," harkening back to English common law for the equitable principle "that no one shall be permitted to take advantage of his own wrong"). If the purpose of the forfeiture-by-wrongdoing exception is, as the Supreme Court has said, to permit "courts to protect the integrity of their proceedings," *Davis*, 547 U.S. at 834, a lower standard of proof is fitting. The purpose of, and the equitable concerns underlying, the forfeiture-by-wrongdoing exception would not be served by a high burden of proof that could instead encourage conduct that undermines the integrity of the criminal justice system. And a higher standard is not

required to protect the defendant's confrontation rights give the Supreme Court's narrow interpretation of the exception, particularly its intent requirement, as stated in *Giles*, 554 U.S. at 361. *See Johnson*, 767 F.3d at 822 ("The intent requirement thus ensures that the judge's inquiry is focused on whether the defendant intended to compromise the integrity of the proceedings, not on whether the defendant committed the underlying offense."). for these reasons, we hold that the burden of proof under the forfeiture-by-wrongdoing exception is the preponderance standard. The trial court applied the preponderance standard in this case, so we turn to whether the court erred in concluding that the State produced sufficient evidence to admit Arndaejae's out-of-court statements under the forfeiture-by-wrongdoing exception to the Confrontation Clause.

*The trial court did not err in its application of the forfeiture-by-wrongdoing exception to admit Arndaejae's out-of-court statements*

To apply the forfeiture-by-wrongdoing exception to the Confrontation Clause, the trial court must find by a preponderance of the evidence that the defendant intentionally procured the witness's absence. In making that determination, the district court must conduct a hearing outside of the jury's presence to consider the evidence relevant to the forfeiture-by-wrongdoing exception.

The State described its unsuccessful efforts to locate Arndaejae using an investigator, as well as efforts made by Arndaejae's phone number.[2] During that call, Anderson told the person on the other end of the call "to disappear for a week" and "to leave [her] phone and go someplace else" so that authorities could not track her. But the court also heard that Arndaejae absconded from juvenile probation "a few months" earlier and that a warrant had been issued for her arrest.

Anderson suggests that the State presented insufficient evidence that he procured Arndaejae's absence, pointing to the outstanding warrant for her arrest as the more likely reason that she would not show up for trial. This argument implicates what it means to "procure" a witness's absence. In considering the meaning of "procure," the Court in *Giles* pointed to definitions including, "to contrive and effect" and "to endeavour to cause or bring about." 554 U.S. at 360 (emphasis and internal quotation marks omitted). These definitions contemplate an affirmative action by the defendant that brings about the witness's absence. *See Carlson v. Att'y Gen. of Cal.*, 791 F.3d 1003, 1100 (9th Cir. 2015) ("The pertinent Supreme Court authority, then, clearly establishes that the forfeiture-by-wrongdoing doctrine applies where there has been affirmative action on the part of the defendant that produces the desired result, non-appearance by a prospective witness in a criminal case."). Thus, we must draw a line between a defendant's mere passive acquiescence in a witness's decision to be absent and a defendant's affirmative effort or collusion with a witness to procure that witness's absence. *See id.* (opining that "[s]imple tolerance of, or failure to foil, a third party's previously expressed decision either to skip town himself rather than testifying or to present another witness from appearing does not 'cause' or 'effect' or 'bring about' or 'procure' a witness's absence"); *Commonwealth v. Edwards*, 830 N.E.2d 158, 171 (Mass. 2005) (applying the forfeiture doctrine where "a defendant actively facilitates the carrying out of the witness's independent intent not to testify"). Distinguishing between passive acquiescence and affirmative action ensures that courts apply the forfeiture-by-wrongdoing

exception to the Confrontation Clause only where the defendant does more than merely approve of the witness's independent decision not to testify. *Edwards*, 830 N.E.2d at 171 ("[A] defendant's joint effort with a witness to secure the latter's unavailability, regardless of whether the witness already decided 'on his own' not to testify, may be sufficient to support a finding of forfeiture by wrongdoing."); *see also State v. Maestas*, 412 P.3d 79, 91 (N.M. 2018). Because it is the rare occasion that an absent witness will be present to explain the reason for his or her absence, the causal relationship between the defendant's actions and the witness's absence need not be proven by direct evidence. Rather, circumstantial evidence may be proffered to demonstrate that the witness's absence is "at the very least,… a logical outgrowth or foreseeable result of the [defendant's efforts.]" *Edwards*, 830 N.E.2d at 171; *see also United States v. Scott*, 284 F.3d 758, 764 (7th Cir. 2002).

We conclude that Anderson's actions indicate more than mere passive acquiescence to Arndaejae's decision to be absent. In his recorded phone call to Arndaejae's phone number, Anderson instructed her to leave her phone so she could not be tracked by law enforcement. This demonstrates by a preponderance of the evidence that Anderson actively worked to keep Arndaejae from the prosecution with the intent that she not testify at his trial. Accordingly, we conclude the trial court did not err in its application of the forfeiture-by-wrongdoing exception to admit Arndaejae's out-of-court statements even though Anderson had no opportunity to confront her regarding the statements.

---

[2] Although disputed below, Anderson conceded on appeal that the phone number belonged to Arndaejae.

ECF No. 68-32 (Ex. 179) at 6-12.

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

### B.    Law Regarding Right to Confront Witnesses.

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right. . . to be confronted with the witnesses against him." The Confrontation Clause requires that a defendant have an opportunity to confront the witness who gave testimony against him, except in cases where an exception applies. *Giles v. California*, 554 U.S. 353, 357 (2008). Generally, if a witness is unavailable, his prior testimony will be admitted only if the defendant had a prior opportunity to cross-examine. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). However, "[an] exception to the confrontation guarantee permits the use of a witness's unconfronted testimony if a judge finds. . . that the defendant committed a wrongful act that rendered the witness unavailable to testify at trial." *Giles*, 554 U.S. at 358. The State "must show[] that the defendant intended to prevent a

witness from testifying." *Id*. at 361. If the witness is absent by the defendant's own procurement, he cannot assert that his constitutional rights have been violated. *Reynolds v. U.S.*, 98 U.S. 145, 158 (1878).

C.    **Anderson fails to show any constitutional violation and fails to show that the Nevada Supreme Court unreasonably decided this claim.**

During voir dire, the prosecution informed the potential jurors of the witnesses they intended to call. ECF No. 63-1 (Ex. 103) at 61. One of the potential witnesses was Anderson's daughter, Arndaejae. *Id*. That evening, Anderson made a phone call from the jail telling a female to disappear for a week and leave her phone so she could not be tracked. ECF No. 64-3 (Ex. 108) at 4. During another call to the same phone number, Anderson wished the female happy birthday. *Id*. at 10. It was Arndaejae's birthday that day. *Id*. Anderson's actions led to Arndaejae's absence. His intention was to prevent her from testifying against him. Thus, he cannot assert that his constitutional right to cross-examine her was violated. *See Reynolds*, 98 U.S. at 158.

The prosecutor tried to locate Arndaejae but could not find her. ECF No. 64-3 (Ex. 108) at 6. There was a warrant issued for her because she absconded from juvenile probation. *Id*. Arndaejae's probation officer and multiple investigators attempted to locate her. *Id*. at 13-14. However, she did not appear to testify. Rafalovich was permitted to testify to Arndaejae's statements based on the doctrine of forfeiture by wrongdoing. ECF No. 64-3 (Ex. 108) at 206.

Anderson fails to show that the Nevada Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law, nor does he show that the decision was based on an unreasonable determination of fact. Accordingly, this Court should deny Ground 1.

III.    **GROUND 2(b): THE NEVADA SUPREME COURT CORRECTLY DECIDED THAT ANDERSON'S SIXTH AMENDMENT RIGHT TO COUNSEL WAS NOT VIOLATED.**

In Ground 2(b), Anderson alleges counsel was ineffective for failing to visit Anderson in jail, which led to a hostile relationship and a conflict of interest. ECF No. 8 at 15. Specifically, Anderson argues trial counsel failed to visit him and answer his office phone. *Id*. Further, he contends that instead of personally visiting him in jail, trial counsel would send his investigator instead. *Id*. Anderson

/ / /

13

contends he "was forced to represent [himself] at trial because the trial court failed to replace counsel. *Id.*

### A.    The Nevada Supreme Court Denied this Claim.

The Nevada Supreme Court denied this claim on direct appeal:

> Anderson contends that his Sixth Amendment right to counsel was violated when the trial court declined to substitute his appointed counsel. We review the district court decision for an abuse of discretion. *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). In *Young*, we adopted a three-factor test to consider when reviewing a district court's denial of such a motion. *Id.* The three factors are "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion." *Id.* (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).
>
> Throughout the course of the proceedings, Anderson filed three requests to substitute counsel. The requests were timely. And each time Anderson filed a motion for substitution of counsel, the trial court held a *Young* hearing to inquire into the extent of the conflict.[1] The record reflects that the trial court's inquiries were thorough and adequate, and evidence supported the trial court's finding that there was not a complete breakdown in the relationship. Therefore, the trial court did not abuse its discretion in denying Anderson's requests.
>
> [1] Anderson withdrew his first request prior to the hearing. He withdrew his second request after the hearing.

ECF No. 68-32 (Ex. 179) at 12-13.

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

### B.    Law Regarding Conflict of Interest.

The guarantee to effective assistance of counsel includes a guarantee of counsel devoid of any conflict of interest. *Wood v. Georgia*, 450 U.S. 261, 271 (1981). When such a conflict is brought to the attention of the court, the court must inquire about the potential conflict." *Holloway v. Arkansas*, 435 U.S. 475, 484 (1978). The Sixth Amendment does not guarantee a petitioner a conflict-free relationship with his counsel, but it does protect him if the conflict between the petitioner and his attorney prevented effective assistance of counsel. *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983).

It is insufficient to show a mere "possibility of conflict." *Cuyler v. Sullivan*, 446 U.S. 335, 351 (1980). Until a defendant shows that counsel was actively representing conflicting interests, the defendant has not established the constitutional predicate for a claim of ineffective assistance. *Id.* at

348, 350 (possible conflict in almost every instance of multiple representation); *Mickens v. Taylor*, 535 U.S. 162, 172 (2002) (petitioner must demonstrate an "actual conflict" that "adversely affect[ed] counsel's performance). Speculation will not substitute for evidence. *Morris v. California*, 966 F.2d 448, 456 (9th Cir. 1992).

When a defendant has, with legitimate reason, completely lost trust in his assigned counsel, and the trial court refuses to remove counsel, the defendant is constructively denied counsel. *Daniels v. Woodford*, 428 F.3d 1181, 1198 (2005) (internal citations omitted). Prejudice is not required where the breakdown of the attorney-client relationship from the irreconcilable differences results in the complete denial of counsel. *United States v. Moore*, 159 F.3d 1154, 1158 (1998).

While a defendant has a right to have counsel appointed at every critical stage, the right does not include having a particular attorney appointed. *Morris*, 461 U.S. at 1; *Brown v. Craven*, 424 F.2d 1166, 1170 (9th Cir. 1970). The trial court has the discretion to reject or grant a substitution of counsel. *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990) (citations omitted). There is no right to substitute new counsel simply because a defendant is dissatisfied. *Id*.

Under *Plumlee v. Masto*, 512 F.3d 1204, 1211 (9th Cir. 2008) (*en banc*), the Ninth Circuit found a state's rejection of a claim was reasonable because the United States Supreme Court has not required a meaningful relationship between counsel and defendant under *Morris*. The court noted that there is no clearly established federal law showing a Sixth Amendment violation for a defendant who "refuses to cooperate because of dislike or distrust." *Id*. However, a court must conduct an inquiry into a defendant's reasons for dissatisfaction, *i.e.*, provide some sort of hearing. *Brown*, 424 F.2d at 1170. The extent of the court's inquiry need only be as comprehensive as the circumstances reasonably would permit. *King v. Rowland*, 977 F.2d 1354, 1357 (9th Cir. 1992).

## C. Anderson Fails to Show Any Constitutional Violation and Fails to Show that the Nevada Supreme Court Unreasonably Decided this Claim.

Anderson fails to show trial counsel was ineffective by failing to visit him in jail and fails to show this resulted in a conflict of interest.

On November 15, 2016, Anderson filed his first motion to dismiss counsel, which he then withdrew less than two weeks later. ECF No. 58-16 (Ex. 16), ECF No. 58-19 (Ex. 19).

On December 29, 2016, Anderson filed a motion to dismiss counsel, arguing counsel should be dismissed for failing to communicate with Anderson, locate or investigate witnesses, file appropriate motions, and retrieve discovery. ECF No. 59-6 (Ex. 28) at 3. Further, Anderson argued that Frizzell only sent his investigator to visit Anderson. *Id*.

The trial court fulfilled its obligation to inquire about the alleged conflict. On January 24, 2017, after Anderson filed his motion to dismiss counsel, the court held a hearing where it asked Anderson's reasons for wanting to dismiss counsel. ECF No. 59-20 (Ex. 42) at 3. Anderson claimed that Frizzell only visited him once over the past five months and that Frizzell did not investigate his alibi. *Id*. Further, Anderson complained there was insufficient evidence at the preliminary hearing to charge him. *Id*. at 4.

Frizzell stated he visited Anderson on at least two occasions. *Id*. at 6. Frizzell explained that the investigator visited Anderson numerous times and investigated Anderson's claims of an alibi. *Id*. at 4. Frizzell further explained that he filed a writ concerning the evidence at the preliminary hearing, which the court denied. *Id*. at 5. The court ordered Frizzell to visit Anderson in jail; however, the motion to dismiss counsel was denied. *Id*. at 7.

Less than two weeks later, Anderson filed three more motions to dismiss counsel, all within eight days of each other. ECF No. 59-24 (Ex. 46), ECF No. 60-1 (Ex. 48), ECF No. 60-2 (Ex. 59). Again, Anderson argued Frizzell should be dismissed for failing to file motions, visit Anderson, and answer his phone. ECF No. 59-24 (Ex. 46) at 2, ECF No. 60-2 (Ex. 59) at 2-3. He further argued Frizzell still did not investigate his alibi defense. ECF No. 59-24 (Ex. 46) at 3, ECF No. 60-1 (Ex. 48) at 3, ECF No. 60-2 (Ex. 59) at 3. Further, Anderson asserted he wanted to represent himself in all three motions. ECF No. 59-24 (Ex. 46), ECF No. 60-1 (Ex. 48), ECF No. 60-2 (Ex. 59).

On March 7, 2017, the trial court fulfilled its obligation by holding a hearing to inquire about the alleged conflict a second time. ECF No. 60-6 (Ex. 53). Anderson again complained Frizzell's lack of communication and failure to investigate his alibi defense caused a conflict. *Id*. at 4. However, Anderson admitted that Frizzell had visited him since the last hearing in January. *Id*. Frizzell explained that the alibi witness did not have information that gave Anderson a good alibi. *Id*. at 5. The court denied the motion, and Anderson insisted that he would rather represent himself. *Id*. at 5-6.

During the *Faretta* canvas, the court inquired into Anderson's legal education and experience. ECF No. 60-7 (Ex. 54). The court found he was not licensed or educated in the law. *Id*. at 29. The court pointed out that Anderson could not name one evidentiary rule or one rule of criminal procedure. *Id*. at 31. The court continued the hearing because Anderson would not answer questions. *Id*. at 33. At the continued hearing, the court did an thorough canvass and found Anderson freely, voluntarily, and intelligently waived his right to be represented by counsel. ECF No. 60-11 (Ex. 58) at 51. The court appointed Frizzell as standby counsel. *Id*. at 39.

Two weeks later, Anderson filed a motion to dismiss Frizzell as standby counsel arguing Frizzell could not be standby counsel because Anderson sued him and Frizzell failed to file motions and failed to communicate with Anderson. ECF No. 60-13 (Ex. 60). At a hearing on June 13, 2017, the court explained to Anderson that as standby counsel, Frizzell is not to argue the case or represent him. ECF No. 61-19 (Ex. 84) at 11. Further, regarding the lawsuit, the court found Anderson filed the lawsuit solely to get Frizzell removed from the case. *Id*. at 12. The court denied the motion. *Id*.

Therefore, through these multiple inquiries, the trial court met its obligation to inquire into the alleged conflict. Additionally, the court's inquiries revealed the existence of no actual conflict that adversely affected counsel's performance. Anderson disagreed with Frizzell's strategy, but there was no evidence that counsel was ineffective in his representation.[1] *See Strickland*, 466 U.S. at 687.

The trial court was within its discretion to decline to dismiss Frizzell where it investigated the issue and found no conflict. Therefore, Anderson did not suffer any violation of his constitutional rights with respect to Ground 2(b). Anderson cannot show that the Nevada Supreme Court's denial of this claim was unreasonable. Therefore, this Court should deny this claim.

## IV.  GROUND 3: THE NEVADA SUPREME COURT CORRECTLY DECIDED THAT ANDERSON'S CONVICTIONS WERE NOT REDUNDANT.

In Ground 3, Anderson alleges his convictions for attempt murder and battery are redundant, violating the Double Jeopardy Clause. ECF No. 8 at 19.

/ / /

/ / /

---

[1] Anderson represented himself at trial with Frizzell as standby counsel.

### A.    The Nevada Supreme Court Denied this Claim.

The Nevada Supreme Court denied this claim on direct appeal:

> Anderson also claims that his convictions for both attempted murder and battery are redundant because they stem from the same conduct. In light of this court's holding in *Jackson v. State*, 128 Nev. 598, 291 P.3d 1274 (2012), Anderson's claim fails. In *Jackson*, the court considered whether a defendant's convictions for attempted murder and aggravated battery violated double jeopardy. *Id*. at 601, 291 P.3d at 1276. In concluding that the convictions did not violate the Double Jeopardy Clause, this court rejected the "same conduct" approach and reiterated its adherence to the "same element" test. *Id*. at 608-611, 291 P.3d at 1280-82 (favoring *Blockburger*'s "same element" test).

ECF No. 68-32 (Ex. 179) at 13.

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

### B.    Law Regarding Redundant Charges.

The Double Jeopardy Clause protects defendants from a second prosecution for the same offense after acquittal or conviction, and against multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498 (1984). A federal court must accept a state court's interpretation of legislative attempt for multiple punishment purposes as the ultimate issue of double jeopardy is entitled to deference under U.S.C. § 2254(d). *Missouri v. Hunter*, 459 U.S. 359, 368 (1983). Double jeopardy is not present if the charges are different. One offense is different from another if each requires proof of a fact that the other does not. *Wilson v. Czerniak*, 355 F.3d 1151, 1154 (9th Cir. 2004) (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)).

In *Jackson v. State*, the Nevada Supreme Court discussed how both the Supreme Court and the Nevada Courts look to the test laid out in *Blockburger* – whether each offense contains an element not contained in the other – to determine whether two sentences penalize the "same offence." *Jackson v. State*, 291 P.3d 1274, 1277-81 (2012).

/ / /

/ / /

/ / /

/ / /

18

### C.    Anderson Fails to Show Any Constitutional Violation and Fails to Show that the Nevada Supreme Court Unreasonably Decided this Claim.

Anderson fails to demonstrate any violation of the Double Jeopardy Clause because he was convicted of two separate charges with different elements for each. Anderson's convictions and statutory elements are laid out as follows:

| Count 1 – Attempt Murder with Use of a Deady Weapon | • Nev. Rev. Stat. 193.330 states: "To commit a crime punishable by death of life imprisonment, the person convicted of the attempted shall be punished by imprisonment for not less than 1 year and not more than 20 years.<br>• Nev. Rev. Stat. 200.010 states: "Murder is the unlawful killing of a human being: (1) With malice aforethought, either express or implied; (2) caused by a controlled substance which was sold, given, traded or otherwise made available to a person in violation of chapter 453 NRS; or (3) Caused by a violation of Nev. Rev. Stat. 453.3325. |
| Count 3 – Battery with Use of a Deadly Weapon Resulting in Substantial Bodily Harm | • Nev. Rev. Stat. 200.481 states: "'Battery means' any unlawful use of force or violence upon the person of another…. If the battery is committed with use of a deadly weapon and… substantial bodily harm to the victim results, for a category B felony by imprisonment in the state prison for a minimum term of not less than 2 years and a maximum term of not more than 15 years, and may be further punished by a fine of not more than $10,000." |

ECF No. 67-21 (Ex. 134) at 2-3.

As laid out above, Anderson's convictions each contain different elements. Anderson fails to establish there was any double jeopardy violation, given that the convictions detailed above are all separate with distinct elements of proof. Moreover, this Court is required to accept the Nevada Supreme Court's interpretation of its own state's laws and legislative intent for multiple punishment purposes, as the ultimate issue of double jeopardy is entitled to deference under 28 U.S.C. § 2254(d). *Hunter*, 459 U.S. 359 at 368.

Under this doubly deferential standard, Anderson fails to demonstrate the Nevada Supreme Court's rejection of his Double Jeopardy Clause violation claim was contrary to, or involved an unreasonable application of, clearly established federal law in violation of AEDPA.

/ / /

/ / /

/ / /

/ / /

## V.    GROUND 33: THE NEVADA COURT OF APPEALS CORRECTLY DECIDED APPELLATE COUNSEL WAS NOT INEFFECTIVE.

### A.    Ground 33(a): Appellate Counsel Was Not Ineffective for Failing to Raise Issues Regarding Anderson's Arrest and Detention on Direct Appeal.

In Ground 33(a), Anderson contends that appellate counsel was ineffective for failing to raise issues regarding his arrest and detention on appeal. ECF No. 8-1 at 26. Specifically, he argues appellate counsel failed to address the photo array. *Id*.

The Nevada Court of Appeals evaluated this claim under the *Strickland* standard and denied it. ECF No. 72-12 (Ex. 248) at 4.

> Anderson claimed appellate counsel was ineffective for failing to challenge his detention and arrest. In a letter Anderson attached to his petition, counsel explained that this issue was not appealable because there was probable cause for Anderson's detention and arrest because two witnesses identified Anderson as the shooter. Anderson's bare claim did not explain how counsel's decision was objectively unreasonable. Accordingly, Anderson failed to demonstrate counsel was deficient or a reasonable probability of success had counsel raised these issues on appeal.

*Id*.

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

As Respondents discuss in Section I(B), *supra*, Anderson must show both deficient performance and prejudice to support a claim of ineffective assistance of counsel. With respect to appellate counsel, a petitioner cannot show deficient performance merely because counsel failed to raise a nonfrivolous issue requested by the petitioner. *Jones v. Barnes*, 463 U.S. 745, 751 (1983). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Id*. at 751-52. Rather, a petitioner must show his counsel unreasonably failed to discover and file nonfrivolous issues. *Delgado v. Lewis*, 223 F.3dd 976, 980 (9th Cir. 2000) (citations omitted). It is inappropriate to focus on what could have been done rather than focusing on the reasonableness of what counsel did. *Williams v. Woodford*, 384 F.3d 567, 616 (9th Cir. 2004) (citation omitted). As to the prejudice requirement, petitioner must prove that but for counsel's errors, he would have prevailed on appeal. *Smith v. Robbins*, 528 U.S. 259, 285 (2000).

Anderson argues appellate counsel was ineffective for failing to raise issues regarding Anderson's arrest and detention on appeal. ECF No. 8-1 at 26. His full argument is "[Appellate counsel] failed to address no arrest warrant. She failed to bring up unlawful detention." *Id*. Anderson does not expand on his argument other than the above bare claims.

### 1.    Counsel was not deficient.

Appellate counsel was not deficient for failing to raise issues regarding Anderson's arrest and detention. Under Nev. Rev. Stat. 171.123(1), police officers may temporarily detain a suspect when officers have reasonable suspicion that the suspect has committed a crime. The person so detained shall be arrested if probable cause for an arrest appears. Nev. Rev. Stat. 171.1231.

As the Nevada Supreme Court noted, appellate counsel explained in a letter to Anderson that these issues were not appealable. ECF No. 69-6 (Ex. 187) at 13. In the letter, appellate counsel explained there was probable cause for his arrest because two witnesses identified him as the shooter and picked him out of the photo array. *Id*. As discussed below in Section VI(C), the photo array and identification were reliable. Further, appellate counsel explained that there was probable cause to stop the vehicle because it was identified in the incident, and he was the registered owner of the vehicle. *Id*. Additionally, she explained the vehicle was not searched until after a search warrant was obtained. *Id*.

Appellate counsel was not deficient in winnowing his claims to those she believed to have the greatest chance of success. *Jones*, 463 U.S. at 751. Therefore, Anderson fails to show that the Nevada Supreme Court unreasonably denied this claim.

### 2.    There was no prejudice.

Even if appellate counsel had presented this claim, there was not a reasonable likelihood that Anderson would have succeeded on appeal. As mentioned above, there was probable cause for his arrest and detention, and appellate counsel explained this to Anderson. Thus, there is no indication that the court would have granted relief on this claim.

Anderson fails to show that the Nevada Court of Appeals' denial was contrary to or an unreasonable application of clearly established federal law as set forth in *Strickland*, nor does he show that the court's decision was based on an unreasonable determination of fact. Therefore, this Court should deny Ground 33(a).

**B.**    **Ground 33(b): Appellate Counsel Was Not Ineffective Because She Did Not Lie During Anderson's Appeal.**

In Ground 33(b), Anderson claims that appellate counsel was ineffective for lying in the appeal. ECF No. 8-1 at 25. Specifically, he alleges she lied regarding Anderson talking to Arndaejae. *Id*. Further, he alleges appellate counsel lied in the appeal regarding Arndaejae stating he was the shooter. *Id*.

The Nevada Court of Appeals again relied on *Strickland* and correctly denied this claim. ECF No. 72-12 (Ex. 248) at 3.

> Anderson claimed appellate counsel was ineffective for lying in his pretention for rehearing/request for en banc consideration of the Nevada Supreme Court's opinion affirming Anderson's judgment of conviction. Anderson claimed that counsel improperly represented in the petition that Anderson's daughter said he was the shooter when he was actually in California at the time of the offenses. Counsel's statement was supported by evidence adduced at trial, and Anderson himself provided correspondence from counsel explaining her actions. Moreover, the jury's verdict was supported by evidence independent of Anderson's daughter's statements, including the testimony of two witnesses identifying Anderson as the shooter. Accordingly, Anderson failed to demonstrate counsel was deficient or a reasonable probability of success on appeal absent counsel's alleged error.

*Id*.

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

**1.    Counsel was not deficient.**

Appellate counsel was not deficient for allegedly lying on appeal. Anderson argues appellate counsel lied and stated he was talking to Arndaejae on the jail call and that Arndaejae said he was the shooter.

There was evidence presented at trial that after the first day of trial, Anderson made a phone call telling a female to disappear for a week, leave her phone, and go someplace else so that she could not be tracked. ECF No. 64-3 (Ex. 108) at 4. A witness testified that Anderson said happy birthday during another call to the same number, and that the call took place on his daughter's birthday. ECF No. 66-1 (Ex. 111) at 180-81. As appellate counsel explained in a letter to Anderson, the trial judge concluded he was talking to his daughter. ECF No. 69-66 (Ex. 187) at 10.

/ / /

Additionally, there was evidence presented that Arndaejae said he was the shooter. Initially, Arndaejae told an investigator that her and Anderson were in California on the date the shooting occurred. ECF No. 66-1 (Ex. 111) at 103. She admitted to the investigator that she was told to say they were in California. *Id*. She also acknowledged that the photo of Anderson at the beach in California had an incorrect time stamp and that she knew the photo was taken months prior to the time stamp. *Id*. at 104. Arndaejae admitted that on the date of the incident, there was an altercation and she witnessed shots fired by Anderson. *Id*. at 104.

Appellate counsel was not deficient in winnowing his claims to those she believed to have the greatest chance of success. *Jones*, 463 U.S. at 751. Therefore, Anderson fails to show that the Nevada Supreme Court unreasonably denied this claim.

### 2.    There was no prejudice.

Even if appellate counsel had presented this claim, there was not a reasonable likelihood that Anderson would have succeeded on appeal. As discussed above, there was evidence that the phone call was made to Arndaejae, and that Arndaejae said he was the shooter. There is no indication the court would have granted the appeal if appellate counsel denied that the call was made to Arndaejae and that she identified him as the shooter, both of which were supported by evidence adduced at trial.

Anderson fails to show that the Nevada Court of Appeals' denial of his claim was contrary to or an unreasonable application of clearly established federal law as set forth in *Strickland*, nor does he show that the court's decision was based on an unreasonable determination of fact. Therefore, this Court should deny Ground 33(b).

### C.    Ground 33(c): Appellate Counsel Was Not Ineffective by Failing to Communicate with Anderson About His Appeal.

In Ground 33(c), Anderson contends appellate counsel was ineffective for failing to communicate with him. ECF No. 8-1 at 25. Specifically, he alleges appellate counsel required him to limit his letters to one page in length. *Id*.

The Nevada Court of Appeals correctly denied this claim. ECF No. 72-12 (Ex. 248) at 3.

> Anderson claimed appellate counsel was ineffective for failing to communicate with him. Anderson claimed counsel told him to limit his letters to one or two issues and to one page in length. Anderson's bare

claim failed to explain how counsel's request for short correspondence rendered counsel deficient or to demonstrate a reasonable probability of success on appeal had Anderson drafted longer letters.

*Id.*

This decision was neither contrary to nor an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of fact.

### 1.    Counsel was not deficient.

Appellate counsel was not deficient for requesting Anderson to keep his letters to one or two issues and one page in length. In her letter to Anderson, appellate counsel stated that Anderson's letters over two days were 33 pages long altogether. ECF No. 69-6 (Ex. 187) at 14. She explained that she would not have time to review and respond to more lengthy letters because she had to prepare the opening brief. *Id.* She requested his letters be on one sheet of paper. *Id.*

There is no evidence that appellate counsel was ineffective due to her request for more concise communication from Anderson. Anderson provides no authority that appellate counsel's request rendered her deficient. Therefore, Anderson fails to show that the Nevada Court of Appeals unreasonably denied this claim.

### 2.    There was no prejudice.

Even if Anderson was permitted to write letters in length to appellate counsel, there was not a reasonable likelihood that Anderson would have succeeded on appeal. Appellate counsel addressed many of Anderson's concerns and why she had no legal authority to pursue the claims he suggested. ECF No. 69-6 (Ex. 187) at 11-14. There is no evidence that additional lengthy letters from Anderson would have resulted in a nonfrivolous claim for appeal, or that the claim would be successful. Appellate counsel was not deficient in winnowing his claims to a few key issues she believed to have the greatest chance of success. *Jones*, 463 U.S. at 751.

Anderson fails to show that the Nevada Court of Appeals' denial of his claim was contrary to or an unreasonable application of the clearly established federal law set forth in *Strickland*, nor does he show that the court's decision was based on an unreasonable determination of fact. Therefore, this Court should deny Ground 33(c).

/ / /

1
2

**VI.    THIS COURT SHOULD DISMISS GROUND 18 SHOULD AS PROCEDURALLY DEFAULTED, OR IN THE ALTERNATIVE DENY IT ON THE MERITS.**

3          In Ground 18, Anderson argues that the photo array was prejudicial. ECF No. 8 at 60. Anderson

4    did not raise this issue in state court, and this Court reserved judgment on the procedural default issue

5    until a review of the merits of this claim. ECF No. 90 at 12.

6          **A.    The Procedural Default Doctrine.**

7          The procedural default doctrine applies to bar federal habeas review when a state court declined

8    to address a prisoner's claims because the prisoner had failed to meet a state procedural requirement.

9    *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Therefore, federal courts will not review a

10   question of federal law decided by the state court if the state court's decision relies on a state court

11   ground that is independent of the federal question and adequate to support the judgment. *Id*. at 727.

12   This rule applies whether the state law ground is substantive or procedural and,

13
14
15
16

> . . .In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

17   *Id*. at 750.

18          To demonstrate cause for a procedural default, the petitioner must "show that some objective

19   factor external to the defense impeded" his efforts to comply with the state procedural rule. *Murray v.

20   Carrier*, 477 U.S. 478, 496 (1986). For cause to exist, the external impediment must prevent the

21   petitioner from raising the claim. *See McCleskey v. Zant*, 499 U.S. 467, 497 (1991). With respect to

22   prejudice, the petitioner bears "the burden of showing not merely that the errors [complained of]

23   constituted a possibility of prejudice, but that they worked to his actual and substantial disadvantage,

24   infecting his entire [proceeding] with errors of constitutional dimension." *White v. Lewis*, 874 F.2d 599,

25   603 (9th Cir. 1989), *citing United States v. Frady*, 456 U.S. 152, 170 (1982).

26   / / /

27   / / /

28   / / /

**B.    Anderson Cannot Demonstrate Cause and Prejudice Due to Appellate Counsel Errors.**

This Court seems to imply Anderson may overcome the procedural of Ground 18 due to the ineffective assistance of counsel claim alleged in Ground 33. ECF No. 90 at 12. Generally, a petitioner must satisfy three prerequisites for a claim of ineffective assistance of trial counsel to excuse the procedural default of a substantive claim. First, there must have been a Constitutional right to counsel during a stage where the error is alleged. *See Coleman*, 501 U.S. at 752. Second, the underlying claim of ineffective assistance of counsel must itself be exhausted and not be procedurally defaulted. *See Edwards v. Carpenter*, 529 U.S. 446, 451 (2000); and *see Murray*, 477 U.S. at 488. Third, the underlying claim of ineffective assistance of counsel must independently meet the *Strickland* standard. *See Murray*, 477 U.S. at 488. Anderson had a constitutional right to the effective assistance of counsel on direct appeal, and the underlying ineffective assistance claim is exhausted. However, Ground 33, as discussed above, is meritless and therefore does not meet the *Strickland* standard and cannot act to excuse the procedural default of Ground 18.

**C.    Alternatively, Ground 18 Is Meritless.**

If this Court finds that Ground 33 is meritorious, thereby excusing the procedural default of Ground 18, this claim still fails on the merits.

To determine whether the Due Process Clause requires suppression of an eyewitness identification, it must first be determined that law enforcement officers used an identification procedure that was both suggestive and unnecessary. *Manson v. Brathwaite*, 432 U.S. 98, 107 (1977); *Neil v. Biggers*, 409 U.S. 188, 198 (1972). A suggestive identification procedure does not, in itself, establish constitutional error; instead, the court must determine whether there was a "'very substantial likelihood of irreparable misidentification.'" *Biggers*, 409 U.S. at 198 (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)); *see Brathwaite*, 432 U.S. at 113 (when an "identification is reliable despite an unnecessarily suggestive [police] identification procedure," automatic exclusion "is a Draconian sanction," one "that may frustrate rather than promote justice").

Due process requires courts to assess, on a case-by-case basis, whether improper police conduct created a "substantial likelihood of misidentification." *Biggers*, 409 U.S. at 201. "[R]eliability [of the

eyewitness identification] is the linchpin" of that evaluation. *Brathwaite*, 432 U.S. at 114. Whether the "indicators of [a witness'] ability to make an accurate identification" are "outweighed by the corrupting effect" of law enforcement suggestion, the identification should be suppressed. *Id*. at 114, 116. Otherwise, the identification, assuming no other barrier to its admission, should be submitted to the jury. *Id*. at 116.

Anderson challenges the photo array by which Bolden and Robinson identified him because he was the only "light skin" black male in the photo array, while the other photos were "very dark skin" males. ECF No. 8 at 61. The photo array contains three black males, including Anderson, that have lighter skin tones; and three black males who have darker skin tones. Exhibit 254, Exhibit 255. Anderson fails to show how his skin tone made the photo array unnecessarily subjective.

Bolden testified that he had "no doubt in [his] mind" that the man he identified was Anderson, and a "picture of the person that shot [him]." ECF No. 64-3 (Ex. 108) at 161. Bolden signed the photo array stating he was "100 percent sure this is the person that shot [him]." *Id*. Robinson testified she automatically identified Anderson from the lineup, and she signed the photo array stating she was "a thousand percent sure" the man she identified was Anderson. *Id*. at 124. Additionally, Bolden and Robinson identified Anderson as the perpetrator in court. ECF No. 64-3 (Ex. 108) at 63, 142. Further, Bolden and Robinson knew Anderson before this incident, knew what car Anderson drove, and gave a description to the police that was similar to Anderson's features.[2] *Id*. at 65, 88, 89, 143, 145, 171. The totality of the circumstances simply does not show that the police procedures by which Bolden and Robinson identified Anderson were unnecessarily suggestive or that their identification of Anderson was unreliable.

Since the police procedures were proper and the identification was reliable, Anderson fails to show counsel performed deficiently. Moreover, Anderson also fails to show he was prejudiced by appellate counsel for failing to appeal the photo array. There is no reasonable likelihood the photo array

---

[2] Anderson suggests that since Robinson said he had short hair and chubby, but he is bald and slim, the identification of him is not valid. Anderson is 6'0" and 210 pounds. ECF No. 67-15 (Ex. 28) at 3. Anderson provides no authority that these discrepancies would have resulted in the identification violating his constitutional.

would have been found prejudicial solely because Anderson's skin tone was lighter than three of the other males. Therefore, there is no prejudice to Anderson.

Anderson cannot overcome the procedural default of Ground 18 because he failed to demonstrate ineffective assistance of counsel in Ground 33. Ground 18 should be dismissed. If this Court reaches the merits of Ground 18, it is meritless and should be denied.

## CONCLUSION

Anderson fails to show that he is entitled to relief with respect to any claim. This Court should dismiss Ground 18 on procedural grounds. The Court should deny the remaining claims on the merits. Anderson fails to show that the Nevada appellate courts' rulings on any of his claims were contrary to or an unreasonable application of any clearly established federal law. Anderson fails to show that there is any clearly established federal law entitling him to federal habeas relief.

RESPECTFULLY SUBMITTED this 22nd day of March, 2024.

AARON D. FORD
Attorney General

By: /s/ Brooke D. Georguson
BROOKE D. GEORGUSON (Bar No. 16406)
Deputy Attorney General

**CERTIFICATE OF SERVICE**

I certify that I am an employee of the Office of the Attorney General and that on this 22nd day of March, 2024, I served a copy of the foregoing **ANSWER TO REMAINING CLAIMS IN PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 8)** by U.S. District Court CM/ECF electronic filing to:

Arnold Anderson #85509
c/o HDSP Law Librarian
22010 Cold Creek Road
Indian Springs, Nevada 89070
HDSP_LawLibrary@doc.nv.gov

/s/ Carrie L. Crago