1    UNITED STATES DISTRICT COURT

2    DISTRICT OF NEVADA

3    ARNOLD ANDERSON,                          Case No. 3:22-cv-00070-ART-CSD

4                              Petitioner,      MERITS ORDER

5        v.

6    TERRY ROYAL,[1] et al.,

7                              Respondents.

8

9        Petitioner Arnold Anderson has filed a Petition for Writ of Habeas Corpus

10   under 28 U.S.C. § 2254. (ECF No. 8 ("Petition").) This matter is before this Court

11   for adjudication of the merits of the remaining grounds in the Petition, which

12   allege that Anderson's confrontation rights were violated, his trial and appellate

13   counsel were ineffective, and his convictions violated the Double Jeopardy

14   Clause. (*Id.*) For the reasons discussed below, this Court denies the Petition and

15   a certificate of appealability.

16   **I.    BACKGROUND**

17        **A.    Factual background**[2]

18        Rhonda Robinson testified that on August 23, 2016, she and her boyfriend,

19   Terry Bolden, were sitting in their vehicle outside of an apartment complex while

20   Bolden texted Anderson, an acquaintance of his. (ECF No. 64-3 at 62, 66.)

21   Anderson drove his black Camaro to their location and parked behind their

22   vehicle. (*Id.* at 69.) After Bolden exited the vehicle to speak with Anderson,

23   _____

24   [1]The state corrections department's inmate locator page states that Anderson is
     incarcerated at Ely State Prison.  Terry Royal is the current warden for that
25   facility. At the end of this order, this Court kindly directs the clerk to substitute
     Terry Royal as a respondent for Respondent William Gittere. *See* Fed. R. Civ. P.
26   25(d).
     [2]This Court makes no credibility findings or other factual findings regarding the
27   truth or falsity of this evidence from the state court. This Court's summary is
     merely a backdrop to its consideration of the issues presented in the Petition.
28

1

Robinson saw Bolden and Anderson fighting. (*Id.* at 70.) Robinson then saw that Anderson "had a gun that he was pointing at [Bolden] and [Bolden] had his hands up." (*Id.* at 71.) Bolden "said [to Anderson] you told me to get $200, and then [Anderson] pointed the gun and shot [Bolden] in the head and then shot him [in] the stomach and then shot him in the leg." (*Id.*) Anderson returned to his car "and then tried to run [Bolden] over with the car." (*Id.*)

Similarly, Bolden testified that he had known Anderson for two to three weeks before August 23, 2016. (ECF No. 64-3 at 140, 143.) On August 23, 2016, after Anderson parked behind Bolden's vehicle, Anderson told Bolden that Bolden owed him money. (*Id.* at 146.) Bolden "attempted to give [Anderson] the money out of [his] pocket," and Anderson "tried to reach and grab and take all [Bolden] had." (*Id.*) Bolden tussled with Anderson "to keep him from taking the money." (*Id.*) As Bolden and Anderson were tussling, a woman got out of Anderson's car, "and [Anderson] hollered at her, give me the gun and she gave [Anderson] the gun." (*Id.*) Anderson shot Bolden in the head, stomach, and leg. (*Id.* at 147.) Anderson got back into his car "and then he tried to back up over [Bolden]," but Bolden "managed to roll out of the way" and ran towards his brother's apartment. (*Id.* at 147–48.) Bolden was later transported to the hospital where he stayed for three days following the shooting. (*Id.* at 154.)

Ernest Larios testified that he was home on the evening of August 23, 2016, watching television when he heard gunshots outside. (ECF No. 64-3 at 181–82.) Larios looked out the window and saw an older black Camaro "backing out[,] heading back up in reverse[,] stopping about in front of [his] house[,] and then taking off forward and going around the corner." (*Id.* at 182, 185.)

Detective Michael Kahnke with the Las Vegas Metropolitan Police Department testified that Robinson identified Anderson from a photographic lineup. (ECF No. 65-1 at 135, 142.) And Detective Gilberto Valenzuela with the Las Vegas Metropolitan Police Department testified that Bolden identified

Anderson from a photographic lineup. (*Id.* at 154, 169.) Two weeks later, while law enforcement were searching for Anderson and his Camaro, Anderson was spotted by a patrol officer and detained. (ECF No. 66-1 at 75.)

Marco Rafalovich, a criminal investigator for the Clark County District Attorney's Office, testified that he met with Arndaejae Anderson (hereinafter "Arndaejae") in the juvenile detention center on December 27, 2016. (ECF No. 65-1 at 99–100.) Arndaejae told Rafalovich that she was with her father, Anderson, on August 23, 2016, and "they went for a drive, they went to a place downtown to meet some people who she didn't know but her father did." (*Id.* at 102.) According to Arndaejae, "[t]here was [then] an altercation and there were shots fired by her father." (*Id.*) Arndaejae told Rafalovich that Anderson told her to say that they "were in California the day this happened." (*Id.* at 103.)

### B.    Procedural background

Anderson represented himself at trial after the trial court held a *Faretta* hearing. (ECF No. 60-7, 60-11.) The jury found Anderson guilty of attempted murder with the use of a deadly weapon and battery with the use of a deadly weapon resulting in substantial bodily harm. (ECF No. 67-21.) Anderson was sentenced to (1) 8 to 20 years for the attempted murder conviction plus a consecutive term of 8 to 20 years for the deadly weapon enhancement and (2) 4 to 10 years for the battery conviction to run consecutively to the attempted murder conviction. (*Id.* at 3.) As such, Anderson was sentenced to an aggregate sentence of 20 to 50 years in prison. Anderson's judgment of conviction was entered on December 5, 2017. (*Id.*)

Anderson appealed, and the Nevada Supreme Court affirmed his judgment of conviction on September 5, 2019. (ECF No. 68-29.) On October 31, 2019, the Nevada Supreme Court withdrew its opinion, nothing that a separately written concurring opinion was inadvertently excluded from the opinion. (ECF No. 68-31.) A new opinion affirming Anderson's judgment of conviction was filed on

November 27, 2019. (ECF No. 68-32.) Anderson petitioned for rehearing and/or for *en banc* consideration on December 15, 2019. (ECF No. 68-33.) The Nevada Supreme Court denied rehearing and reconsideration on February 18, 2020. (ECF No. 69-2.) Remittitur issued on March 16, 2020. (ECF No. 69-3.)

Anderson filed his state post-conviction habeas petition on January 5, 2021. (ECF No. 69-6.) The state court denied Anderson post-conviction relief on May 27, 2021. (ECF No. 71-10.) Anderson appealed, and the Nevada Court of Appeals affirmed on November 5, 2021. (ECF No. 72-12.) Remittitur issued on November 30, 2021. (ECF No. 72-15.)

Anderson transmitted his instant Petition on February 1, 2022. (ECF No. 8 at 1.) In his Petition, Anderson presented the following grounds for relief:

1.   His Confrontation Clause rights were violated regarding witness Marco Rafalovich.
2.   His trial counsel was ineffective for (a) failing to give him a witness's recorded statement before the forfeiture hearing, (b) failing to visit him which led to a hostile relationship and a conflict of interest, (c) failing to give him his discovery materials, and (d) failing to timely file his pretrial writ.
3.   His convictions for attempted murder and battery are redundant.
4.   Arndaejae was charged with the attempted murder and battery of Bolden, and although she pleaded guilty to a lesser included offense, Anderson cannot also be charged and convicted regarding the same crimes against Bolden.
5.   The prosecution solicited false testimony from crime scene analyst Caitlyn King.
6.   Juror number 6 should have been removed for cause during voir dire and then removed from the jury after she arrived late one day for trial, which resulted in a *Batson* violation because the alternates, who should have been substituted for juror number 6, were black.
7.   The justice court should have dismissed his case for a lack of evidence at the preliminary hearing.
8.   His 3-hour detention following his traffic stop amounted to an unlawful seizure.
9.   Officer Jacob Werner presented false testimony.
10.  There was no arrest warrant issued and no existence of probable cause for his arrest.
11.  His counsel was ineffective for failing to timely file his pretrial writ.
12.  The court clerk said that he was guilty at the beginning of the trial.
13.  The prosecutor failed to properly authenticate the jail phone call, which resulted in the presentation of false evidence and

4

the jury knowing he was in jail.

14. He was denied a fair trial because the State was represented by two prosecutors at the trial.
15. The trial court erred in ignoring jurors' questions.
16. The trial court erred in not inquiring why the jury foreman wrote "dick" in his notes because this showed that the foreman was biased.
17. He failed to receive his discovery from the State.
18. The photographic lineup was prejudicial.
19. Bolden presented differing stories of the crime, so the prosecution's presentation of Bolden as a witness amounted to the knowing presentation of false testimony.
20. Robinson testified inconsistently.
21. The trial court failed to inquire about his mental health before allowing him to represent himself at trial.
22. The jury instructions were misleading.
23. The prosecution failed to subpoena Arndaejae.
24. His right to a speedy trial was violated.
25. The prosecution failed to correct the false testimony of crime scene analyst Brooke Cornell.
26. The jury was biased.
27. The search warrant for his car was erroneous.
28. The trial court erred in overruling his objections during trial.
29. The prosecution lied to the jury.
30. The prosecution changed its theory of the case.
31. The trial court erred by not declaring a mistrial.
32. The trial court violated various judicial codes of conduct.
33. His appellate counsel was ineffective for (a) failing to raise various issues in his appeal, (b) lying during his appeal, and (c) failing to communicate with him about his appeal.
34. Officer Gilberto Valenzuela lied in his police report and provided false testimony at trial.
35. There was insufficient evidence to support his convictions.
36. The trial court allowed Rafalovich's inadmissible statement.

(ECF Nos. 8, 8-1.)[3]

Respondents moved to dismiss the Petition on June 21, 2023, filing a notice of corrected image the following day. (ECF Nos. 55, 56.) Anderson filed two responses to the motion to dismiss. (ECF Nos. 77, 78.) Respondents then filed an amended motion to dismiss on July 12, 2023. (ECF No. 81.) Anderson filed a response to the amended motion to dismiss and moved to amend his response.

---

[3]Notably, this Court found that counsel may be helpful given the length and complexities of Anderson's claims. (ECF No. 18 at 1.) Anderson expressed his desire that counsel be appointed, and on September 12, 2022, this Court appointed the Federal Public Defender to represent Anderson. (ECF No. 23.) However, in December 2022, Anderson moved for the Federal Public Defender to be relieved as counsel and to be returned to *pro se* status. (*See* ECF No. 34.) This Court granted Anderson's requests on January 24, 2023. (*Id.*)

(ECF Nos. 82, 83.) Respondents replied to Anderson's response on July 31, 2023. (ECF No. 88.) Anderson filed a surreply on August 7, 2023. (ECF No. 89.) This Court dismissed grounds 2(a), 2(c), 2(d), 4 through 17, 19 through 32, a portion of ground 33(a), and 34 through 36. (ECF No. 90.)

Respondents filed their answer to the remaining grounds in the Petition on March 22, 2024. (ECF No. 94.) Anderson replied on April 17, 2024. (ECF No. 96.)

## II.    GOVERNING STANDARD OF REVIEW

28 U.S.C. § 2254(d) sets forth the standard of review generally applicable in habeas corpus cases under the Antiterrorism and Effective Death Penalty Act ("AEDPA"):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court decision is an unreasonable application of clearly established Supreme Court precedent within the meaning of 28 U.S.C. § 2254(d) "if the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10) (internal citation omitted).

The Supreme Court has instructed that "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult to meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt" (internal quotation marks and citations omitted)).

## III.   DISCUSSION

### A.   Ground 1—Confrontation Clause

In ground 1, Anderson alleges that his rights under the Confrontation Clause were violated when Rafalovich testified about Arndaejae's statements because Arndaejae did not testify. (ECF No. 8 at 3.)

#### 1.   Background information

The morning of the second day of trial, the prosecutor informed the trial court that it received a recorded telephone call from the jail that Anderson had made that morning to Arndaejae. (ECF No. 64-3 at 4.) According to the prosecutor, Anderson "told [Arndaejae] to disappear and to leave her phone at wherever she is and go someplace else so that we could not track her." (*Id.*) The

prosecutor then played the telephone call for the trial court. (*Id.* at 6.) The prosecutor requested that he be allowed to introduce Arndaejae's statements through Rafalovich because Anderson "forfeits his right to confront the witness whose statements would be given to the jury." (*Id.* at 4–5.) The prosecutor explained that he did not know where Arndaejae was currently located, his investigator was actively looking for her, and there was a warrant for her due to her absconding from juvenile probation. (*Id.* at 6, 11–12.)

In response, Anderson argued that he never said Arndaejae's name during the phone call, so the prosecutor "doesn't know who [he was] talking to." (*Id.* at 7.) According to Anderson, he was telling a "friend in a different matter" to disappear for a week. (*Id.* at 8.) The trial court responded, "[d]o you really think that I'm that stupid?" (*Id.*) The prosecutor then explained that Anderson must have been calling Arndaejae because he called that same phone number a different time to wish the recipient a happy birthday and that day corresponded with Arndaejae's birthday, which the prosecution was able to verify through her juvenile probation records. (*Id.* at 10.) Anderson rebutted that other people have that same birthday. (*Id.*)

The trial court then made the following ruling:

> I'm going to allow the State, based on the doctrine of forfeiture by wrongdoing, make a finding that the State has shown by a prepondering [sic] to the evidence, that the witness is not available, due to the defendant's own actions in deterring her and that he intended to do it to prevent her from coming and testifying against him. I'll allow you to bring in that statement.

(*Id.* at 206.)

### 2.   State court determination

In affirming Anderson's judgment of conviction, the Nevada Supreme Court found:

> Anderson argues that the introduction of Arndaejae's out-of-court statements violated his rights under the Sixth Amendment's Confrontation Clause. *See* U.S. CONST. amend. VI. The State does not

dispute, and we accept without deciding, that Arndaejae's out-of-court statements were testimonial. Rather, the State asserts that Anderson forfeited his right to confront Arndaejae by procuring her absence. Anderson in turn asserts that the State failed to prove by a preponderance of the evidence that Arndaejae was absent because of his actions so as to trigger the forfeiture-by-wrongdoing exception to the Confrontation Clause.

> [FN 4] There are two independent hurdles to admitting out-of-court statements: the Sixth Amendment's Confrontation Clause and Nevada's evidentiary statutes. Anderson does not challenge the admissibility of Arndaejae's statements pursuant to the evidentiary statutes, so we do not address them.

Whether a defendant's Confrontation Clause rights were violated is a question of law subject to de novo review. *Chavez v. State*, 125 Nev. 328, 339, 213 P.3d 476, 484 (2009).

The Sixth Amendment's Confrontation Clause provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. It bars admission of "testimonial evidence" unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). The United States Supreme Court, however, has recognized that a defendant may forfeit the right to confrontation. In particular, "one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation." *Davis v. Washington*, 547 U.S. 813, 833 (2006). To demonstrate such a forfeiture, the State must "show[ ] that the defendant intended to prevent a witness from testifying." *Giles v. California*, 554 U.S. 355, 361 (2008). Although the Supreme Court has acknowledged forfeiture by wrongdoing as an exception to the Sixth Amendment's confrontation guarantee and addressed the scope of that exception, it has not taken a position on the evidentiary standard that the State must meet to show forfeiture by wrongdoing. *See Davis*, 547 U.S. at 833 (taking "no position on the standards necessary to demonstrate such forfeiture"). This court also has not yet taken a position on that issue. We take this opportunity to do so.

*Preponderance of the evidence is the appropriate standard of proof*

Amond the federal circuit and state courts that have grappled with the burden-of-proof issue, the focus has been on whether the appropriate burden is clear and convincing evidence or a more forgiving preponderance of the evidence. *See United States v. Johnson*, 767 F.3d 815, 820–23 (9th Cir. 2014) (discussing the issue and cases addressing it). The overwhelming majority of those courts have held that the preponderance-of-the-evidence standard applies to the forfeiture exception to the Confrontation Clause. *Id.* at 821–23; *see State v. Thompson*, 45 A.3d 605, 615–16 (Conn. 2012) (compiling a list of all states applying the preponderance standard as of 2012).

On one end of the spectrum, the United States Court of Appeals for the Fifth Circuit held in *United States v. Thevis* that the prosecution must prove that a defendant procured the absence of a witness by clear and convincing evidence for the forfeiture exception to apply. 665 F.2d 616, 631 (5th Cir. 1982), *superseded by rule on*

*other grounds as stated in United States v. Nelson*, 242 Fed. App'x 164 (5th Cir. 2007). In doing so, the court reasoned that confrontation rights are important "in testing the reliability of evidence" and the clear-and-convincing-evidence standard typically applies to evidentiary decisions "[w]here reliability of evidence is a primary concern." *Id.* (citing *United States v. Wade*, 388 U.S. 218, 240 (1967) (holding that where defense counsel was not present at a lineup identification, the prosecution must be given an opportunity to prove by clear and convincing evidence that the witness's in-court identification of the defendant was based on observations of the defendant other than the lineup identification). On the other end of the spectrum, a number of federal circuits apply a preponderance-of-the-evidence standard. In *United States v. Mastrangelo*, for example, the United States Court of Appeals for the Second Circuit opined that the preponderance standard is more suitable because "wavier by misconduct is an issue distinct from the underlying right of confrontation" and a higher standard "might encourage behavior which strikes at the heart of the system of justice itself." 693 F.2d 269, 273 (2d Cir. 1982); *see also United States v. White*, 116 F.3d 903, 912 (D.C. Cir. 1997); *United States v. Houlihan*, 92 F.3d 1271, 1280 (1st Cir. 1996); *Steele v. Taylor*, 684 F.2d 1193, 1202 (6th Cir. 1982) ("A standard that requires the proponent to show that it is more probable than not that the defendant procured the unavailability of the witness is constitutionally sufficient under the due process and confrontation clauses."); *United States v. Balano*, 618 F.2d 624, 629 (10th Cir. 1979), *overruled on other grounds by Richardson v. United States*, 468 U.S. 317, 325–26 (1984).

We agree with the majority of courts that have considered the issue—the preponderance standard provides the appropriate burden of proof for purposes of the forfeiture-by-wrongdoing exception to the Confrontation Clause. As the United States Supreme Court has observed, the forfeiture-by-wrongdoing exception is not about the reliability of the evidence at issue. *Crawford*, 541 U.S. at 62 (stating that the exception "make[s] no claim to be a surrogate means of assessing reliability"). The exception instead grows out of equitable concerns with allowing a defendant to benefit from his or her own wrongdoing. *Reynolds v. United States*, 98 U.S. 145, 158–59 (1879) (stating that "[t]he Constitution does not guarantee an accused person against the legitimate consequences of his own wrongful acts," harkening back to English common law for the equitable principles "that no one shall be permitted to take advantage of his own wrong"). If the purpose of the forfeiture-by-wrongdoing exception is, as the Supreme Court has said, to permit "courts to protect the integrity of their proceedings," *Davis*, 547 U.S. at 834, a lower standard of proof is fitting. The purpose of, and the equitable concerns underlying, the forfeiture-by-wrongdoing exception would not be served by a high burden of proof that could instead encourage conduct that undermines the integrity of the criminal justice system. And a higher standard is not required to protect the defendant's confrontation rights given the Supreme Court's narrow interpretation of the exception, particularly its intent requirement, as stated in *Giles*, 554 U.S. at 361. *See Johnson*, 767 F.3d at 822 ("The intent requirement thus ensures that the judge's inquiry is focused on whether the defendant intended to compromise the integrity of the proceedings, not on whether the defendant committed the underlying offense."). For these reasons, we hold that the burden

of proof under the forfeiture-by-wrongdoing exception is the preponderance standard. The trial court applied the preponderance standard in this case, so we turn to whether the court erred in concluding that the State produced sufficient evidence to admit Arndaejae's out-of-court statements under the forfeiture-by-wrongdoing exception to the Confrontation Clause.

*The trial court did not err in its application of the forfeiture-by-wrongdoing exception to admit Arndaejae's out-of-court statements*

To apply the forfeiture-by-wrongdoing exception to the Confrontation Clause, the trial court must find by a preponderance of the evidence that the defendant intentionally procured the witness's absence. In making that determination, the district court must conduct a hearing outside of the jury's presence to consider the evidence relevant to the forfeiture-by-wrongdoing exception.

The State described its unsuccessful efforts to locate Arndaejae using an investigator, as well as efforts made by Arndaejae's probation officer. Asserting that Anderson procured her absence, the State produced a recording of a phone call that Anderson placed from the jail to Arndaejae's phone number. [FN5] Although disputed below, Anderson conceded on appeal that the phone number belonged to Arndaejae. During that call, Anderson told the person on the other end of the call "to disappear for a week" and "to leave [her] phone and go someplace else" so that authorities could not track her. But the court also heard that Arndaejae absconded from juvenile probation "a few months" earlier and that a warrant had been issued for her arrest.

Anderson suggests that the State presented insufficient evidence that he procured Arndaejae's absence, pointing to the outstanding warrant for her arrest as the more likely reason that she would not show up for trial. This argument implicates what it means to "procure" a witness's absence. In considering the meaning of "procure," the Court in *Giles* pointed to definitions including "to contrive and effect" and "to endeavor to cause or bring about." 554 U.S. at 360 (emphasis and internal quotation marks omitted). These definitions contemplate an affirmative action by the defendant that brings about the witness's absence. *See Carlson v. Attorney General of California*, 791 F.3d 1003, 1010 (9th Cir. 2015) ("The pertinent Supreme Court authority, then, clearly establishes that the forfeiture-by-wrongdoing doctrine applies where there has been affirmative action on the part of the defendant that produces the desired result, non-appearance by a prospective witness against him in a criminal case."). Thus, we must draw a line between a defendant's mere passive acquiescence in a witness's decision to be absent and a defendant's affirmative effort or collusion with a witness to procure that witness's absence. *See id.* (opining that "[s]imple tolerance of, or failure to foil, a third party's previously expressed decision either to skip town himself rather than testifying or to prevent another witness from appearing does not 'cause' or 'effect' or 'bring about' or 'procure' a witness's absence"); *Commonwealth v. Edwards*, 830 N.E.2d 158, 171 (Mass. 2005) (applying the forfeiture doctrine where "a defendant actively facilitates the carrying out of the witness's independent intent not to testify"). Distinguishing between passive acquiescence and affirmative action ensures that courts apply the forfeiture-by-wrongdoing exception to the

11

Confrontation Clause only where the defendant does more than merely approve of the witness's independent decision not to testify. *Edwards*, 830 N.E.2d at 171 ("[A] defendant's joint effort with a witness to secure the latter's unavailability, regardless of whether the witness already decided 'on his own' not to testify, may be sufficient to support a finding of forfeiture by wrongdoing."); *see also State v. Maestas*, 412 P.3d 79, 91 (N.M. 2018). Because it is the rare occasion that an absent witness will be present to explain the reason for his or her absence, the casual relationship between the defendant's actions and the witness's absence need not be proved by direct evidence. Rather, circumstantial evidence may be proffered to demonstrate that the witness's absence is "at the very least, . . . a logical outgrowth or foreseeable result of the [defendant's efforts]." *Edwards*, 830 N.E.2d at 171; *see also United States v. Scott*, 284 F.3d 758, 764 (7th Cir. 2022); *State v Shaka*, A18-0778, 2019 WL 1890550, at * 4–5 (Minn. Ct. App. Apr. 29, 2019).

We conclude that Anderson's actions indicate more than mere passive acquiescence to Arndaejae's decision to be absent. In his recorded phone call to Arndaejae's phone number, Anderson instructed her to leave her phone so she could not be tracked by law enforcement. This demonstrates by a preponderance of the evidence that Anderson actively worked to keep Arndaejae from the prosecution with the intent that she not testify at his trial. Accordingly, we conclude the trial court did not err in its application of the forfeiture-by-wrongdoing exception to admit Arndaejae's out-of-court statements even though Anderson had no opportunity to confront her regarding the statements.

(ECF No. 68-32 at 6–12.)

### 3.    Confrontation Clause

The Sixth Amendment's Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." Regarding out-of-court statements admitted at trial, the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004). However, there is an exception "if a witness is absent by [the defendant's] own wrongful procurement." *Reynolds v. United States*, 98 U.S. 145, 158 (1878). The Constitution "grants [the defendant] the privilege of being confronted with the witnesses against him; but if he voluntarily keeps the witnesses away, he cannot insist on his privilege." *Id.*; *see also Davis v. Washington*, 547 U.S. 813, 833 (2006) ("[O]ne who obtains the absence of a

witness by wrongdoing forfeits the constitutional right to confrontation."); *Giles v. California*, 554 U.S. 353, 358 (2008) ("[A]n exception to the confrontation guarantee permits the use of a witness's unconfronted testimony if a judge finds . . . that the defendant committed a wrongful act that rendered the witness unavailable to testify at trial.").

### 4.    Analysis

As the Nevada Supreme Court reasonably determined, the trial court did not err in applying the forfeiture-by-wrongdoing exception and allowing Rafalovich to testify about Arndaejae's out-of-court statements. Anderson does not dispute that he made a telephone call from the jail the morning of the second day of trial asking the person to disappear and leave her cell phone so that she could not be tracked. Anderson only disputes that that telephone call was made to his daughter, Arndaejae. (ECF No. 8 at 3.) In support of this argument, Anderson contends that Arndaejae did not fail to appear at the trial because he persuaded her not to; rather, she did not appear at the trial because she had a warrant for her arrest for absconding probation. (ECF No. 96 at 8.)

This Court acknowledges that Anderson may not have said Arndaejae's name during the recorded jail telephone call and that Arndaejae may have had another reason for not attending the trial as a witness for the prosecution, but Anderson fails to demonstrate that the Nevada Supreme Court's conclusion that his actions amounted to more than mere passive acquiescence to Arndaejae's absence involved an unreasonable application of federal law or was based on an unreasonable determination of the facts. Indeed, as the Nevada Supreme Court reasonably determined, the prosecution submitted sufficient evidence to show, by a preponderance of the evidence, that Anderson actively worked to keep Arndaejae from testifying for the prosecution. Based on Anderson telling the recipient of the same telephone number happy birthday on the day of Arndaejae's birthday, it can be inferred that Arndaejae was the person to whom Anderson

told to disappear. This inference is supported by Anderson's failure to articulate who he was speaking to if it was not Arndaejae. Accordingly, because Anderson wrongfully contributed to Arndaejae's absence, he has forfeited his constitutional right to confront her as a witness. *Reynolds*, 98 U.S. at 158; *Davis*, 547 U.S. at 833; *Giles*, 554 U.S. at 358.

Anderson also asserts that Rafalovich's testimony about Arndaejae's out-of-court statement was untrue and unreliable because Rafalovich did not record his conversation with Arndaejae. (ECF No. 8 at 3–5.) To support this argument, Anderson cites to Arndaejae's voluntary statement to Detective Valenzuela wherein Arndaejae stated that she and her father were in California at the time of the shooting. (*See id.* at 6–13.) Because Anderson was able to cross-examine Rafalovich about these issues, he fails to show a violation of his constitutional right to confrontation.

Anderson is not entitled to federal habeas relief for ground 1.

### B.    Ground 2(b)—Trial counsel ineffectiveness

In ground 2(b), Anderson alleges that his Sixth Amendment right was violated due to his counsel's failure to visit him in jail or return his telephone calls, which resulted in a hostile relationship, a conflict of interest, and a need for Anderson to represent himself at trial. (ECF No. 8 at 15.)

#### 1.    Background information

On November 15, 2016, Anderson filed a motion to dismiss his counsel and to represent himself. (ECF No. 58-16.) In his motion, Anderson alleged that his trial counsel had failed to investigate and to file any pretrial motions. (*Id.*) On November 28, 2016, Anderson withdrew his November 15, 2016, motion, explaining that he "wish[ed] to keep [his] attorney of record." (ECF No. 58-19.) Anderson explained that his trial counsel "did make a jail visit and speak to [him] to address issues." (*Id.*)

On December 29, 2016, Anderson filed a second motion to dismiss his

counsel and to represent himself. (ECF No. 59-6.) In his motion, Anderson alleged that his trial counsel failed to directly communicate with him (instead only sending an investigator to speak with him), locate or investigate witnesses, file appropriate motions, and retrieve documentation. (*Id.*) A hearing was held on Anderson's motion on January 24, 2017. (ECF No. 59-20.) At the hearing, Anderson explained that he had only met with his trial counsel once in person and spoken to him once on the phone. (*Id.* at 3.) In response, Anderson's trial counsel stated that (1) he "ha[d] sent [his] investigator over [to the jail to speak with Anderson] numerous times," (2) Anderson usually called in the mid-mornings when trial counsel was in court on other matters, and (3) he had visited Anderson twice at the jail. (*Id.* at 4–6.) The trial court told Anderson's trial counsel "to go see [Anderson] in the detention center" but stated that it did not "see a basis to dismiss [Anderson's] counsel." (*Id.* at 7.) Anderson then responded, "I don't want him as counsel, period, because I can't even talk to that man." (*Id.*) The trial court indicated that it would allow Anderson to come back a week later to make any further representations on the issue. (*Id.*)

Another hearing was held a week later on January 31, 2017. (ECF No. 59-23.) At that hearing, Anderson's trial counsel explained that he and his investigator had gone to the jail to speak with Anderson. (*Id.* at 3.) Anderson then explained that his issues with his trial counsel had been resolved, and he was withdrawing his motion to dismiss counsel. (*Id.*)

On February 6, 2017, Anderson filed a third motion to dismiss his counsel and to represent himself. (ECF No. 59-24.) And on February 14, 2017, Anderson filed a fourth and a fifth motion to dismiss his counsel and to represent himself. (ECF Nos. 60-1, 60-2.) A hearing was held on March 7, 2017. (ECF No. 60-6.) At the beginning of the hearing, Anderson's trial counsel explained that since February 14, 2017, Anderson had sent him "what [he] would affectionally call a love letter" but that "now today he's angry with him again." (*Id.* at 3.) Anderson

then explained, *inter alia*, (1) that he and his trial counsel "are having problems communicating," (2) his trial counsel had only visited him in the jail twice in his six months of incarceration, and (3) his trial counsel was "not doing the things that [Anderson had been] asking him to do as far as part of [the] defense." (*Id.* at 4.) Anderson's trial counsel rebutted that he had been communicating with Anderson and that Anderson's alibi witness—the issue behind their communication issues—was not panning out as Anderson had hoped. (*Id.* at 4–5.) The trial court denied the third, fourth, and fifth motions to dismiss counsel. (*Id.* at 6.) Anderson then stated that he wanted to represent himself, and the trial court stated that he would hold a *Faretta* hearing the following week. (*Id.*) The Court held a *Faretta* hearing over the course of two days. (ECF Nos. 60-7, 60-11.)

### 2.    State court determination

In affirming Anderson's judgment of conviction, the Nevada Supreme Court found:

> Anderson contends that his Sixth Amendment right to counsel was violated when the trial court declined to substitute his appointed counsel. We review the district court decision for an abuse of discretion. *Young v. State*, 120 Nev. 963, 968, 102 P.3d 572, 576 (2004). In *Young*, we adopted a three-factor test to consider when reviewing a district court's denial of such a motion. *Id.* The three factors are "(1) the extent of the conflict; (2) the adequacy of the inquiry; and (3) the timeliness of the motion." *Id.* (quoting *United States v. Moore*, 159 F.3d 1154, 1158-59 (9th Cir. 1998)).
>
> Throughout the course of the proceedings, Anderson filed three requests to substitute counsel. The requests were timely. And each time Anderson filed a motion for substitution of counsel, the trial court held a *Young* hearing to inquire into the extent of the conflict.
>
> > [FN7] Anderson withdrew his first request prior to the hearing. He withdrew his second request after the hearing.
>
> The record reflects that the trial court's inquiries into Anderson's conflicts with appointed counsel were thorough and adequate, and evidence supported the trial court's finding that there was not a complete breakdown in the relationship. Therefore, the trial court did not abuse its discretion in denying Anderson's requests.

(ECF No. 68-32 at 12–13.)

### 3.    Analysis

The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defense." U.S. CONST. amend. VI. However, the Sixth Amendment does not "guarantee[ ] a 'meaningful relationship' between an accused and his [or her] counsel." *Morris v. Slappy*, 461 U.S. 1, 14 (1983) (explaining that "[n]ot every restriction on counsel's time or opportunity to investigate or to consult with his client or otherwise to prepare for trial violates a defendant's Sixth Amendment right to counsel"); *see also United States v. Moore*, 159 F.3d 1154, 1158-59 (1998) (fashioning a three-part test to determine whether a conflict rises to the level of being irreconcilable: "(1) the extent of the conflict; (2) the adequacy of the inquiry [by the court]; and (3) the timeliness of the motion").

This Court agrees that there appears to have been some communication issues between Anderson and his trial counsel. In fact, Anderson desired for his trial counsel to make more in-person visits to the jail (rather than sending his investigator), to accept more of his telephone calls, and to investigate his alibi defense further. However, as the Nevada Supreme Court reasonably concluded, the evidence does not support a finding of a complete breakdown in Anderson's relationship with his trial counsel. Rather, it appears that Anderson vacillated between being satisfied with his trial counsel and wanting him removed: (1) Anderson withdrew his first motion to dismiss his counsel after his counsel visited him at the jail, (2) Anderson withdrew his second motion to dismiss his counsel again after his counsel visited him at the jail, and (3) Anderson apparently sent his trial counsel "a love letter" after his third, fourth, and fifth motions to dismiss his counsel were filed. Further, as the Nevada Supreme Court also reasonably concluded, the trial court conducted meaningful inquiries into Anderson's timely motions, allowing both Anderson and his trial counsel sufficient opportunity to present their arguments on the record.

That being said, even if this Court were to disagree with the Nevada Supreme Court about the extent of the conflict or the adequacy of the trial court's inquiry, the Ninth Circuit has determined that "[e]ven if [a petitioner] were successfully able to demonstrate a complete breakdown in communication or prove that an irreconcilable conflict existed . . . , [a] irreconcilable-conflict claim would still fail" because the Supreme Court "has never held that an irreconcilable conflict with one's attorney constitutes a per se denial of the right to effective counsel." *Carter v. Davis*, 946 F.3d 489, 508 (9th Cir. 2019). Instead, to demonstrate that his trial counsel was ineffective, Anderson must meet the two-pronged test outlined in *Strickland*.[4] However, Anderson does not allege or demonstrate any prejudice, especially since he represented himself at trial.

Anderson is not entitled to federal habeas relief for ground 2(b).

## C.    Ground 3—Double Jeopardy

In ground 3, Anderson alleges that his right to be free from Double Jeopardy was violated due to his convictions for attempted murder and battery being redundant. (ECF No. 8 at 19.)

### 1.    State court determination

In affirming Anderson's judgment of conviction, the Nevada Supreme Court found:

> Anderson also claims that his convictions for both attempted murder and battery are redundant because they stem from the same conduct. In light of this court's holding in *Jackson v. State*, 128 Nev. 598, 291 P.3d 1274 (2012), Anderson's claim fails. In *Jackson*, this court considered whether a defendant's convictions for attempted murder and aggravated battery violated double jeopardy. *Id.* at 601, 291 P.3d at 1276. In concluding that the convictions did not violate

---

[4]In *Strickland v. Washington*, the Supreme Court propounded a two-prong test for analysis of claims of ineffective assistance of counsel requiring the petitioner to demonstrate (1) that the attorney's "representation fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. 668, 688, 694 (1984).

the Double Jeopardy Clause, this court rejected the "same conduct" approach and reiterated its adherence to the "same element" test. *Id.* at 608–11, 291 P.3d at 1280–82 (favoring *Blockburger*'s "same element" test).

(ECF No. 68-32 at 14.)

### 2.    Standard for Double Jeopardy

The Fifth Amendment's Double Jeopardy Clause prohibits multiple punishments for the same offense. U.S. CONST. amend. V. The "same-elements" test established in *Blockburger v. United States*, 284 U.S. 299 (1932) is used to determine whether multiple prosecutions or multiple punishments involve the same offense. *United States v. Dixon*, 509 U.S. 688, 696 (1993). The test "inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." *Id.*; *see also Ball v. United States*, 470 U.S. 856, 861 (1985) ("The assumption underlying the *Blockburger* rule is that Congress ordinarily does not intend to punish the same offense under two different statutes."). "Conversely, '[d]ouble jeopardy is not implicated so long as each violation requires proof of an element which the other does not.'" *Wilson v. Belleque*, 554 F.3d 816, 829 (9th Cir. 2009) (quoting *United States v. Vargas-Castillo*, 329 F.3d 715, 720 (9th Cir. 2003)). "'If each [offense] requires proof of a fact that the other does not, the *Blockburger* test is satisfied, notwithstanding a substantial overlap in the proof offered to establish the crimes.'" *Id.* (quoting *Iannelli v. United States*, 420 U.S. 770, 785 n.17 (1975)). The "same act or transaction" can "constitute[ ] a violation of two distinct statutory provisions." *Blockburger*, 284 U.S. at 304.

### 3.    Analysis

As is relevant here, Nevada law defines murder as "the unlawful killing of a human being . . . with malice aforethought, either express or implied." Nev. Rev. Stat. § 200.010. Nevada law defines attempt as "[a]n act done with the intent to commit a crime, and tending but failing to accomplish it." Nev. Rev. Stat. §

193.153. And Nevada law defines battery as "any willful and unlawful use of force or violence upon the person of another." Nev. Rev. Stat. § 200.481.

Attempted murder requires an intent to kill, malice aforethought, and failure to complete the crime of murder. None of these are elements of battery. And battery—but not murder—requires physical contact. Accordingly, as the Nevada Supreme Court reasonably determined, under the *Blockburger* same-elements test, attempted murder and battery contain an element not contained in the other, so Anderson's prosecutions for both attempted murder and battery did not involve the same offense in violation of the Double Jeopardy Clause.

Moreover, importantly, Nevada law provides that "[n]othing in this section [regarding attempts to commit a crime] protects a person who, in an unsuccessful attempt to commit one crime, does commit another and different one, from the punishment prescribed for the crime actually committed." Nev. Rev. Stat. § 193.153(2). Because Nevada law expressly authorizes punishment for both the attempt to commit a crime—here, attempted murder—and the crime actually committed—here, battery—the Nevada Legislature has authorized cumulative punishment, negating a finding of any double jeopardy violation. *See Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."); *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial."); *Ohio v. Johnson*, 467 U.S. 493, 499 (1984) ("Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, . . . the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of

1    legislative intent.").

2        Anderson is not entitled to federal habeas relief for ground 3.

3        **D.    Ground 18—Photographic lineup**

4        In ground 18, Anderson alleges that the photographic lineup violated his

5    Fifth and Fourteenth Amendment rights because he was racially profiled. (ECF

6    No. 8 at 60.) This Court found ground 18 to be unexhausted and procedurally

7    defaulted. (ECF No. 90 at 10.) This Court then found that ground 33(a) *may* serve

8    as cause to excuse the procedural default of ground 18; however, it deferred

9    ruling on this issue until after determining whether Anderson's appellate counsel

10    was ineffective as Anderson alleged in ground 33(a). (*Id.* at 11–12.) As is discussed

11    in ground 33(a), Anderson's appellate counsel was not ineffective for failing to

12    raise the issue of Anderson's detention and arrest in his direct appeal, so ground

13    33(a) cannot serve as cause to excuse the procedural default of ground 18.

14    Ground 18 is dismissed.

15        **E.    Ground 33—Appellate counsel ineffectiveness**

16        In ground 33, Anderson alleges that his direct appeal counsel was

17    ineffective. (ECF No. 8-1 at 25.) The *Strickland* standard is also utilized to review

18    appellate counsel's actions: a petitioner must show "that [appellate] counsel

19    unreasonably failed to discover nonfrivolous issues and to file a merits brief

20    raising them" and then "that, but for his [appellate] counsel's unreasonable

21    failure to file a merits brief, [petitioner] would have prevailed on his appeal." *Smith*

22    *v. Robbins*, 528 U.S. 259, 285 (2000).

23        **1.    Ground 33(a)—failing to raise issue of detention and arrest**

24        In ground 33(a), Anderson alleges that his appellate counsel failed to raise

25    a claim regarding his detention and arrest on direct appeal. (ECF No. 8-1 at 25.)

26        **a.    Background information**

27        Detective Valenzuela testified that Bolden and Robinson's independent

28    identifications of Anderson as the shooter gave him probable cause to arrest

1    Anderson. (ECF No.65-1 at 169.) Detective Valenzuela testified that he "placed a

2    briefing line in our department datable, and [he] also placed all the information

3    through NCIC, the national database." (*Id.*)

4        Las Vegas Metropolitan Police Department Patrol Officer Justin Duke

5    testified that he was briefed on the fact that law enforcement was "looking for a

6    black . . . Camaro, older model, like a 2000, with tinted windows, and they gave

7    the license plate." (ECF No. 66-1 at 70–71.) During the briefing, it was relayed

8    that law enforcement "had probable cause to stop the vehicle and to . . . detain

9    the registered owner," Anderson. (*Id.* at 80.) On September 5, 2016, a vehicle

10   matching the description of the Camaro drove in front of Officer Duke's patrol

11   vehicle. (*Id.* at 72.) Officer Duke followed the vehicle and then verified that the

12   license plate number matched the license plate number of the Camaro in

13   question. (*Id.* at 73.) Officer Duke conducted "a felony car stop," where he "call[ed]

14   the individuals out of the car," based on information that Anderson was

15   potentially armed. (*Id.* at 76.) Anderson and a young woman exited the Camaro,

16   and Deputy Duke "placed them into handcuffs, . . . [and] did pat downs." (*Id.* at

17   76–77.) After Anderson identified himself, Officer Duke "got in contact with the

18   detectives [who] were working the case." (*Id.* at 78.) Detective Valenzuela arrived

19   on scene and arrested Anderson. (ECF No. 65-1 at 171.)

20       In a letter written to Anderson by his appellate counsel, she stated the

21   following regarding his detention and arrest:

22       **THE ARREST WAS LEGAL**. There was probable cause for the car
     stop and arrest because two witnesses identified you as the shooter,
23   and picked you out of a photo lineup. The police had already
     identified you as the registered owner of the car that was stopped,
24   and two witnesses had identified that registered owner as the person
     who shot Bolden. So, there was probable cause to stop the car. It
25   appeared from the testimony that the police wanted to wait to arrest
     when the car was in motion in the hope that they would find you and
26   the gun in the vehicle. That was their right. For the same reason,
     there was probable cause to impound the car, and it was not
27   searched until they obtained a search warrant. **But even if your
     arrest was illegal**, that only gets you exclusion of the "fruit of the
28   poisonous tree," which means if you had blurted out that you were

guilty, that could be excluded at trial. But, there was nothing like that to exclude. You do not get your charges dismissed because of an illegal arrest. All you get is exclusion of evidence that would not have been obtained but for the illegal arrest – usually a confession.

(ECF No. 69-6 at 13 (emphases in original).)

### b.    State court determination

In affirming the state court's denial of Anderson's post-conviction petition, the Nevada Court of Appeals held:

> Third, Anderson claimed appellate counsel was ineffective for failing to challenge his detention and arrest. In a letter Anderson attached to his petition, counsel explained that this issue was not appealable because there was probable cause for Anderson's detention and arrest because two witnesses identified Anderson as the shooter. Anderson's bare claim did not explain how counsel's decision was objectively unreasonable. Accordingly, Anderson failed to demonstrate counsel was deficient or a reasonable probability of success had counsel raised these issues on appeal. We therefore conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 72-12 at 4.)

### c.    Analysis

Anderson was detained and then arrested based on (1) Bolden and Robinson identifying Anderson from a photographic lineup as the individual who shot Bolden, (2) detectives identifying the vehicle registered to Anderson, which also matched a description of the vehicle used in the crime, (3) detectives asking patrol officers to be on the lookout for Anderson's vehicle, and (4) a patrol officer spotting Anderson's vehicle, verifying the license plate on the vehicle, and then stopping the vehicle. As the Nevada Supreme Court reasonably noted, based on this information, Anderson's appellate counsel reasonably found that there was probable cause for Anderson's detention and arrest. *See Beck v. Ohio*, 379 U.S. 89, 91 (1964) (explaining that the question of whether an officer has probable cause turns on "whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense"); *see also* Nev. Rev. Stat. § 171.123(1)

1    (allowing "[a]ny peace officer [to] detain any person whom the officer encounters

2    under circumstances which reasonably indicate that the person has committed,

3    is committing or is about to commit a crime"), Nev. Rev. Stat. § 171.1231 (allowing

4    "the person so detained [to] be arrested if probable cause for an arrest appears").

5    Consequently, as the Nevada Supreme Court reasonably determined, Anderson

6    fails to show that contesting his detention and arrest on appeal would have been

7    fruitful. Because the Nevada Supreme Court's determination constituted an

8    objectively reasonable applicable of *Strickland*'s performance and prejudice

9    prongs, Anderson is not entitled to federal habeas relief for ground 33(a).

10              **2.    Ground 33(b)—lying**

11              In ground 33(b), Anderson alleges that his appellate counsel lied when she

12    stated that Anderson was talking to Arndaejae on the jail call and that Arndaejae

13    said that he was the shooter. (ECF No. 8-1 at 25.)

14              **a.    Background information**

15              As was discussed in ground 1, the Nevada Supreme Court, in deciding

16    Anderson's Confrontation Clause issue on direct appeal, stated that "[a]lthough

17    disputed below, Anderson conceded on appeal that the phone number belonged

18    to Arndaejae." (ECF No. 68-32 at 10.) In a letter written to Anderson by his

19    appellate counsel, she stated the following regarding Arndaejae:

20              It doesn't matter that you said that you were not talking to your
         daughter. The issue on appeal, as I have stated before, is whether or
21         not the trial judge made an error. She concluded that you were
         talking with your daughter, and there was evidence to support that.
22         You (1) called your daughter's phone number (2) on her birthday,
         and (3) you were talking with a woman. Right or wrong, it was not
23         ***error*** for the trial judge to conclude that you were talking with your
         daughter. So, on appeal, I had to make an argument going under
24         that assumption. Since I had to assume that in my argument, it
         made no difference that the appellate court also assumed that. The
25         issue on appeal is why you told (your daughter) to hide from the
         police, not whether or not it was your daughter you were talking to.
26
27    (ECF No. 69-6 at 10 (emphasis in original).)

28

24

### b.    State court determination

In affirming the state court's denial of Anderson's post-conviction petition, the Nevada Court of Appeals held:

> First, Anderson claimed appellate counsel was ineffective for lying in his petition for rehearing/request for en banc reconsideration of the Nevada Supreme Court's opinion affirming Anderson's judgment of conviction. Anderson claimed that counsel improperly represented in the petition that Anderson's daughter said he was the shooter when he was actually in California at the time of the offense. Counsel's statement was supported by evidence adduced at trial, and Anderson himself provided correspondence from counsel explaining her actions. Moreover, the jury's verdict was supported by evidence independent of Anderson's daughter's statements, including the testimony of two witnesses identifying Anderson as the shooter. Accordingly, Anderson failed to demonstrate counsel was deficient or a reasonable probability of success on appeal absent counsel's alleged error. We therefore conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 72-12 at 3.)

### c.    Analysis

As this Court noted in ground 1, based on Anderson telling the recipient of the same telephone number happy birthday on the day of Arndaejae's birthday, it can be reasonably inferred that Arndaejae was the person to whom Anderson told to disappear during the recorded jail phone call. As such, the Nevada Supreme Court reasonably concluded that Anderson's appellate counsel's statement in his appellate briefing that the phone call was made to Arndaejae was supported by evidence adduced at trial. Further, even if Anderson's appellate counsel had not conceded that Anderson was speaking with Arndaejae during that phone call, he fails to demonstrate that the result of his appeal would have been different given that an argument that he was speaking to someone other than Arndaejae would have been nonsensical. Turning to Anderson's counsel's alleged error in stating that Arndaejae said that Anderson was the shooter, Anderson fails to demonstrate any deficiency. Rafalovich testified that Arndaejae told him that there was an altercation and that "there were shots fired by her

father." (ECF No. 65-1 at 99–100, 102.) Although Anderson disputes the reliability of Rafalovich's testimony in this regard, the Nevada Supreme Court again reasonably concluded that Anderson's statement in his appellate briefing about this fact was supported by evidence adduced at trial.

Because the Nevada Supreme Court's determination constituted an objectively reasonable applicable of *Strickland*'s performance and prejudice prongs, Anderson is not entitled to federal habeas relief for ground 33(b).

### 3. Ground 33(c)—failing to communicate

In ground 33(c), Anderson alleges that his appellate counsel failed to communicate with him about his direct appeal because she required his letters be limited to one page in length. (ECF No. 8-1 at 25.)

### a. Background

On March 18 and March 19, 2018, Anderson wrote an aggregate of 33 pages to his appellate counsel addressing various issues for his appeal. (ECF No. 69-6 at 14.) On March 29, 2018, Anderson's appellate counsel responded with a four-page, thorough letter addressing appealable issues, issues that needed further research, and issues that were not appealable. (*Id.* at 11–14.) Anderson's appellate counsel then explained the following at the end of her letter:

> It's difficult to explain to someone how I do an appeal, but basically, I read through the Appendix, putting little post-its along the top with issues written on them. I may have little post-its for Confrontation, for instance, over all volumes of the Appendix in different places where it was discussed. When I finish reading through the entire Appendix, then I go back, and type up on separate sheets of paper, all the pertinent testimony and arguments that were made as to each separate issue that I have identified. I will have one page for Confrontation, one page for jail calls, etc. Then, I research each of those issues in the context of the testimony and argument that I have identified.
>
> As of right now, I have finished reading through the Appendix. I am embarking on the next step which I just explained above. After I finish all of that, then I write the Opening Brief. Right now, I am on Step 2. I'm not sure how long that will take me – a week or two. I anticipate at this time that I will be able to file the Opening Brief by its due date of April 23rd.

> You must understand that there is a strategy in writing appeals, and one of those is not to overwhelm the appellate court with minor issues that have little chance of success so that they devote time to considering those and perhaps don't spend as much time considering the important issues that have the best chance for success. I have to use my best judgment in deciding what to argue on appeal and what not to argue.
>
> Between now and the time I file the Opening Brief, I will not have time to review and respond to more extremely lengthy letters. If you have an issue or two that you want me to consider that you can put on one sheet of paper, then I will read that. Otherwise, I really have to concentrate now on preparing the Opening Brief.

(*Id.* at 14.)

### b.    State court determination

In affirming the state court's denial of Anderson's post-conviction petition, the Nevada Court of Appeals held:

> Second, Anderson claimed appellate counsel was ineffective for failing to communicate with him. Anderson claimed counsel told him to limit his letters to one or two issues and to one page in length. Anderson's bare claim failed to explain how counsel's request for short correspondence rendered counsel deficient or to demonstrate a reasonable probability of success on appeal had Anderson drafted longer letters. We therefore conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(ECF No. 72-12 at 3.)

### c.    Analysis

The Nevada Supreme Court reasonably concluded that Anderson failed to demonstrate how his appellate counsel was deficient. Anderson wrote his trial counsel 33 pages, explaining the issues he wished to have addressed in his direct appeal. Anderson's appellate counsel responded, detailing which of the issues had a chance to be fruitful and which of the issues should be left out to avoid distraction from the better ones. Anderson's trial counsel then explained that she was going to begin drafting the opening brief and requested that Anderson limit any further correspondence. Anderson tends to ramble in his writing, so Anderson's trial counsel's request for a succinct letter was reasonable, especially since she explained she was going to be busy drafting the opening brief.

The Nevada Supreme Court also reasonably concluded that Anderson failed

27

to demonstrate prejudice. Anderson fails to show how the result of his direct appeal would have been different if he was permitted to draft longer letters to his appellate counsel.

Because the Nevada Supreme Court's determination constituted an objectively reasonable applicable of *Strickland*'s performance and prejudice prongs, Anderson is not entitled to federal habeas relief for ground 33(c).

## IV.    CERTIFICATE OF APPEALABILITY

Rule 11 of the Rules Governing Section 2254 Cases requires this Court to issue or deny a certificate of appealability (COA). This Court has evaluated the claims within the Petition for suitability for the issuance of a COA. Under 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has made a substantial showing of the denial of a constitutional right." With respect to claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For procedural rulings, a COA will issue only if reasonable jurists could debate (1) whether the petition states a valid claim of the denial of a constitutional right and (2) whether this Court's procedural ruling was correct. *Id.* Applying these standards, this Court finds that a certificate of appealability is unwarranted.

## V.    CONCLUSION

It is therefore ordered that petition for writ of habeas corpus under 28 U.S.C. § 2254 [ECF No. 8] is denied. A certificate of appealability is denied.

It is further ordered that the Clerk of the Court is directed to substitute Terry Royal for Respondent William Gittere, enter judgment, and close this case.

DATED THIS 8th day of January 2025.

_____
ANNE R. TRAUM
UNITED STATES DISTRICT JUDGE